STATE v. SAMUEL LUCAS.

(Decided May 2, 1899).

*Murder—Degrees—State Witnesses—Charge—Verdict—Practice.*

1. The State Solicitor will not be required to place all the State witnesses, sworn in the case, upon the witness stand for examination. He will be allowed to manage the case in his own way, so that he observes the law and rules of practice.

2. Where the verdict, as rendered by the foreman, was "Guilty of murder," it was proper for the Judge to ask, whether they found the prisoner guilty of murder in the first or second degree, and upon the foreman responding, "In the first degree," for the Clerk to ask, "So say you all?" and upon their response in the affirmative, to record their verdict accordingly.

3. Where there is no evidence in the case making the killing manslaughter, it is proper for the Judge to so instruct the jury, and it would have been useless and out of place to have charged the jury upon a proposition of law that there was no evidence to sustain.

4. Where the killing with a deadly weapon is shown and admitted, and there is no evidence tending to show anything in extenuation or excuse, it is proper for the Court to instruct the jury, that the only question for them was, whether it was murder in the first or second degree.

INDICTMENT for MURDER, tried before *Timberlake, J.,* at August Term, 1898, of GUILFORD Superior Court.

The prisoner was indicted for the murder of Henry Wood, whom he shot and killed at Greensboro, N. C., as was admitted.

The evidence on the part of the State is succinctly stated in the opinion. It was admitted without objection. The defendant introduced no evidence.

In the course of his charge, his Honor instructed the jury: Where the killing with a deadly weapon is established or

admitted, as the defendant has done in this case, the law presumes it was murder in the second degree, and imposes on the defendant the burden of reducing the crime to manslaughter or excusable homicide—and imposes on the State the burden of elevating the homicide to the higher crime of murder in the first degree.

In this case the Court charges you as a matter of law, that there is no evidence which would sustain a verdict of excusable homicide or manslaughter, and that your verdict must be murder in the first degree, or murder in the second degree.

Defendant excepted.

There were exceptions taken to the conduct of the cause, to the Court not requiring the Solicitor to examine all the State witnesses, and to the manner of taking the verdict, which are adverted to in the opinion.

The verdict, as recorded, was: Guilty of murder, and in the first degree.

There was sentence of death, and prisoner appealed.

*Mr. Zeb. V. Walser,* Attorney General, for the State.
No counsel *contra.*

FURCHES, J. This is an indictment for murder and the verdict of the jury is guilty of murder in the first degree. From the evidence in the case, it was a shocking affair, a deliberate and cruel murder. The evidence tends to prove that the prisoner, a short time before he shot the deceased at at the Piedmont House, said, "I'll kill the son of a bitch;" that he and one Dunnell came towards the Express office where the deceased was standing in the door talking to Collins the Express Agent; stopped and talked, went past the door, where the deceased was standing, stopped and talked; went towards the center of the street, then turned and came

STATE *v.* LUCAS.

towards the door where the deceased was standing, with his his hand in his hip pocket; and just before reaching the door he pulled his hand out of his pocket, with his pistol in it; that deceased ran, the prisoner ran after him, and shot once before the deceased got out of the office, which is more than 100 feet in length; that he shot twice more after the deceased got out of the house and while deceased was still running.

The second fire was probably the fatal shot, as the deceased was seen to throw up his hands to his back and hold it at the place of the wound.    The deceased died that night, and Dr. Battle testified that he died of that wound.    The prisoner said he intended to kill the deceased, but was afraid he had not done so; that he went to get his own pistol, a Smith & Wesson, and had he got it, there would have been no running.

But we will not pursue this line of thought further, as it was admitted on the trial and the argument of the case that the prisoner shot and killed the deceased.

While there are several exceptions, there are none to the evidence, and none to his Honor's charge, applying to the first and second degrees of murder, under the statute of 1893.

The prisoner introduced no evidence, and the State closed without putting all the witnesses it had sworn upon the stand. The prisoner insisted that the State should put them on the stand, and asked his Honor so to rule. The Court declined to do this, saying that the Solicitor would be allowed to manage the case in his own way, so that he observed the law and rules of practice.    To this the prisoner excepted.    This exception can not be sustained.    *State v. Martin,* 24 N. C., 101; *State v. Smallwood,* 75 N. C., 104; *State v. Baxter,* 82 N. C., 602.

When the jury came into Court to return their verdict, the foreman being asked by the Clerk responded "Guilty of Murder."    The Judge asked whether they found the prisoner

guilty of murder in the first or second degree, when the fore-man responded "in the first degree." The Clerk then asked, "So say you all," and they responded in the affirmative, and the verdict was so recorded. This was done in open Court in the presence of the prisoner and his counsel, and no objection made at the time. If there was any doubt about the matter, in the minds of the prisoner's counsel, they might have had the jury polled, but this was not asked for.

It seems to us that the action of the Court was entirely proper. It was its duty to see that the proper entry should be made of the finding of the jury. This exception can not be sustained.

Another ground of error assigned by the prisoner is that the Court did not charge and explain the law with regard to manslaughter. The Court charged that there was no evidence in the case making the killing manslaughter. If he was correct in this, it would have been not only useless, but, as it seems to us, out of place to have charged the jury upon a proposition of law that there was no evidence to sustain. And we entirely approve of the charge of the Court that there was no evidence in the case to authorize the jury in finding a verdict of manslaughter. This exception can not be sustained.

Another ground assigned as error is that the Court instructed the jury that the killing with a deadly weapon being shown and admitted, and the prisoner having failed to show anything in extenuation or excuse by his own or the State's evidence, the only question for them was whether it was murder in the first or second degree. This instruction was correct and in accordance with the decisions of this Court. *State v. Rhyne,* at this term.

As this is an issue of life and death, we have carefully examined all the exceptions and assignments of error in the

case, and find no error.    The judgment of the Court below must be affirmed.

Affirmed.