STATE v. WILLIAM TRUESDALE.

(Decided December 12, 1899.)

*Indictment, Murder—Degree—Verdict—Record Proper—*
*Statement of Case on Appeal—Discrepancy.*

1. The Court must judicially know from the *record proper*, and not from the *statement* of the case on appeal, what offense the prisoner was convicted of.

2. Where there is a discrepancy between the two, the record proper governs.

3. Under the Act of 1893, chap. 85, distinguishing murder into two degrees, the jury, on conviction, must determine in their verdict whether the crime is murder in the *first* or *second* degree, and the record must show that they have so done, in order that there may be a proper judgment. *State v. Lucas.* 124 N. C., 827.

4. Where the transcript of the record says the verdict was, that the prisoner "was guilty of the felony and murder in manner and form as charged in the bill of indictment," and the statement of the case on appeal says, "a verdict of guilty of murder in the first degree was rendered by the jury," a new trial will be awarded.

INDICTMENT for murder, tried before *Battle, J.,* at September Term, 1899, of the Criminal Court of MECKLENBURG County.

The prisoner was indicted for the murder of Janie Brown, and according to the transcript of the record proper, he was found guilty of the felony and murder in manner and form as charged in the bill of indictment; but the verdict did not indicate the degree of murder, whether first, or second. Sentence of death was passed upon the prisoner, who appealed to the Superior Court of Mecklenburg County. His Honor, *McNeill, J..* upon a revision of the case, determined there was

STATE *v.* TRUESDALE.

no error, and affirmed the judgment. The prisoner appealed to the Supreme Court.

The statement of the case on appeal says: A verdict of guilty of murder in the first degree was rendered by the jury, and the sentence of death pronounced by his Honor upon the defendant.

The question as to the discrepency between the verdict, as recorded, and as stated in the case on appeal, arises in the case.

*Mr. Chase Brenizer,* for appellant.

*Messrs. Shepherd & Busbee,* with the *Attorney-General,* for the State.

FURCHES, J. This is an indictment for murder, tried in the Criminal Court of Mecklenburg County, in which the jury returned the following verdict: "The jury say for their verdict upon oath that the said Will Truesdale is guilty of the felony and murder in manner and form as charged in the bill of indictment." Upon this verdict the prisoner was sentenced to be hanged; from which judgment he appealed to the Superior Court of said county. The Judge of the Superior Court affirmed the judgment of the Criminal Court, and the prisoner appealed to this Court.

There does not appear to have been an exception taken during the whole trial. But the prisoner asked for the fol-lowing instructions:

"1. From the testimony in the case the jury can not convict the prisoner of murder in the first degree.

"2. At most, the jury can only convict of murder in the second degree.

"3. There is no evidence of deliberation or premeditation in this case."

The Court refused to give either of these instructions, and the prisoner excepted.    The refusal of the Court to give these prayers was made the basis of the argument before us.

It was contended in this argument that there was not sufficient evidence of deliberation and premeditation to authorize the Court to submit the issue of murder in the first degree to the jury, and *Wittkowsky v. Wasson,* 71 N. C., 451; *Spruill v. Insurance Co.,* 120 N. C., 141; *State v. Gregg,* 122 N. C., 1032; *State v. Rhyne,* 124 N. C., 347; *State v. Norwood,* 115 N. C., 789; *State v. McCormac,* 116 N. C., 1033, and *State v. Thomas,* 118 N. C., 1118, were cited to sustain this contention, but, in our opinion, none of these cases sustain it.

Without quoting the evidence in this case, it discloses these facts—that the deceased was pregnant at the time of her death; that on the day before she was killed, she had the prisoner arrested upon a charge of bastardy as being the father of the child; that at the trial of the bastardy case, the prisoner and the deceased came to terms of compromise, when the prisoner agreed to pay her $10 in cash, and to procure a place for her to stay, in Charlotte; that on the evening after the trial, the prisoner and the deceased went to the house of Emma Leopard (a colored woman), where the prisoner procured lodgings for the deceased for the night; that he left this place about dark, telling the deceased that he would return and bring her supper; that he returned about 9 o'clock, and asked the deceased to take a walk with him; the deceased said that she had not had any supper, when the prisoner remarked that he would get her supper up street; that she was a stranger there, and he wanted to show her the town; that they left together, and this was the last time she was seen alive, so far as the evidence discloses; that on the next day she was found some three-fourths of a mile from the house of Emma Leopard, in the woods, dead; that from a severe wound

on the left side of the head, crushing the skull, she died; that from this and from other wounds and from signs of a scuffle, it was apparent that she had been murdered. This wound on the head (the doctor testified) had evidently been made by some heavy substance, with square corners; that it rained hard that night, and the prisoner returned and went to the house of Rosa Marks (another colored woman) in Charlotte, about 11 o'clock that night, in a wet condition, where he stayed until morning; that he was asked by several parties where the deceased (Janie Brown) was, to which he made different and contradictory statements. To some of the parties, he said that she was afraid to stay in Charlotte, and had gone to Asheville. To others, he said he had sent her to Asheville; and, to others, he said that a big black man had taken her from him; he said he knew the man, but refused to tell who he was, as he did not wish to get him into trouble. When arrested the next day, the prisoner was found to be in possession of a pocket-book which Janie had that night when she left Emma's house with the prisoner; containing at that time $4 in silver, but empty when found in the prisoner's possession. The prisoner made other contradictory statements about the matter. There were splotches on his shirt that resembled blood, and which the doctor thought was blood, though they had been washed, and he would not give a positive opinion as to whether they were blood or not.

Without stating more, we are of the opinion that this evidence was sufficient to carry the case to the jury, and they have said that the prisoner was the murderer. This being so, and there being no exception to the evidence or charge of the Court, it must be held that the prisoner is the murderer. And taking it as a fact found that the prisoner killed the deceased, it seems to us, that there is an abundance of evidence going to show that he did it with premeditation. If

he did the killing, it must have been the tragic ending of a murderous conception of the prisoner's mind, entered upon at least from the time they left the house of Emma Leopard.

Probably Thomas's case and Rhyne's case, *supra,* are as favorable to the prisoner's contention as any others, and they seemed to be very much relied on in the argument here, by Mr. Brenizer. But, to our minds, they afford no support to his contention. Take Rhyne's case: That occurred in the presence of eye-witnesses, who testified to the facts. From this testimony it appeared that there was no quarrel or trouble between Rhyne and the deceased, until the deceased committed an assault on Rhyne, by putting his hand on his shoulder and telling him to come around to the light; and at that moment the fatal stroke was made. To our minds the two cases do not stand in the line of comparison, and that Rhyne's case fails to support the prisoner's contention that there was no evidence of "deliberation and premeditation."

We would affirm the judgment of the Court below, but for the verdict of the jury, which is, as stated above, in these words: "The jury say for their verdict, upon oath, that the said Will Truesdale is guilty of the felony and murder in manner and form as charged in the bill of indictment." In this there is error, for which we are bound to arrest the judgment. This we do with reluctance, as the case on appeal states that the prisoner was convicted of murder in the first degree; and we only do so after requiring another certificate of the record below, thinking that it might be that the Clerk, in making up the transcript on appeal, had inadvertently committed an error in this respect. But the new certificate shows that he has not, as it is the same as the first.

Where there is a discrepancy between the case on appeal and the transcript of record proper, the statements in the transcript of the record proper must be taken to be correct,

and the Court must be governed by that. *State v. Keeter,* 80 N. C., 472; *Adrian v. Shaw,* 84 N. C., 832; *Farmer v. Williams,* 75 N. C., 401; *McCanless v. Flinchum,* 95 N. C., 358; *State v. Carleton,* 107 N. C., 756. And the Court must judicially know from the record, and not from the statement of the case on appeal, what offense the prisoner was convicted of. *State v. Johnson,* 73 N. C., 70; *State v. Wise,* 66 N. C., 120; *State v. Lawrence,* 81 N. C., 522.

These cases were before the Act of 1893, chap. 85, dividing murder into two degrees (first and second), making the punishment on conviction of murder in the first degree death, and in the second degree, a penitentiary offense.

At first, we were disposed to hold that, under *State v. Lawrence, supra,* the verdict was sufficient to authorize a sentence under the second section of the Act of 1893—murder in the second degree. But, upon a further investigation of the matter, we are satisfied this can not be done. The third section of the act provides that, "Nothing in this act shall be construed to require any alteration or modification of the existing form of indictment for murder, but the jury before whom the offender is tried shall determine *in their verdict* whether the crime is murder in the *first or second degree.*" And in *State v. Lucas,* 124 N. C., 827, the jury, when asked by the Clerk if they had agreed, responded "guilty of murder." The Court asked whether they found the prisoner guilty of murder in the first or second degree, when the foreman responded "in the first degree." The Clerk then asked "so say you all," and they responded in the affirmative. This was objected to by the prisoner, and formed one of his exceptions on the hearing upon appeal, and the action of the Court below was approved by this Court.

Under the terms of the statute, and the authorities cited, there must be a new trial, *State v. Whitaker,* 89 N. C., 472,

though not specially excepted to. *Carter v. Rountree,* 109 N. C., 29; *Thornton v. Brady,* 100 N. C., 38. This will be certified to the Superior Court of Mecklenburg County, that it may there be certified to the Criminal Court of that county, for a new trial in that court.

New trial.