STATE v. ED. WALKER AND JEFF. DORSETT.

(Filed 24 November, 1915.)

**1. Homicide—Mistaking Deceased's Identity—Robbery—Evidence.**

Where upon a trial for a homicide there is evidence tending to show that the defendants laid in wait along a country road in the dark of the evening and killed the deceased and robbed him; that he was driving a bay horse to a top buggy at the time, and that another person, an employee of a railroad, had been paid $125 by the railroad company at its usual time for paying off its employees, which custom was known in the city, a railroad center, it is competent to show that such employee also owned and drove a bay horse to a top buggy and had gone along the road ahead of the deceased, especially when there is evidence of declarations by the accused that they had missed their man, who had gone on ahead driving a bay horse.

**2. Same—Motive.**

Where the evidence upon a trial for murder tends to show that the accused in the dark of the evening killed the deceased under the mistake that he was another whom they intended to rob, it is not necessary that motive for the homicide be shown.

**3. Homicide—Lying in Wait—Murder, First Degree—Concealment—Dark—Evidence.**

For a homicide committed by "lying in wait" to be murder in the first degree it is not necessary that the accused should have concealed himself at the time, and it is sufficient if he placed himself alongside a country road after the dark of the evening, when he could not be recognized by one eight or ten feet off, and killed the deceased while he was passing the place.

**4. Homicide—Murder, First Degree—Evidence—Identity of Accused—Instructions—Trials.**

Where all the facts in evidence tend to show that a murder in the first degree had been committed, and the issue of fact for the jury is only one of identity of the accused, a charge of the judge that the jury should return either a verdict in the first degree or acquit the accused, when the burden and degree of proof are properly placed and defined, is a correct one.

**5. Same—Polling Jurors—Answers of Jurors.**

Where the court has correctly charged the jury, upon the evidence, on a trial for homicide, that their verdict should find the accused "guilty of murder in the first degree or acquit him," and in rendering the verdict the foreman gave the answer "Guilty," and, replying to the question of the court, said "Guilty of murder in the first degree," and, upon polling the jury at the request of the prisoner, each juror answered "Guilty," without defendant's request for further reply, a judgment of guilty of murder in the first degree is properly entered.

APPEAL by prisoners from *Lyon, J.,* at April Term, 1915, of GUILFORD.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*
` Charles A. Hines for the prisoners.*

CLARK, C. J.  The prisoners were convicted of murder in the first degree of John Swain, who was shot between 6 and 7 o'clock on the evening of Wednesday, 20 January, 1915, and died from the wound on the following Saturday.  The murder occurred about 1½ miles from the city of Greensboro, on the Ashboro-Pittsboro road just beyond the concrete bridge over Buffalo Creek.

Plunkett, a witness for the State, testified that he passed two men near the road, whom he took to be colored men; that Swain was 15 or 20 yards behind him, and as Swain got abreast of the men the witness heard a shout and, turning around, saw Swain jump out of the buggy, saw the flash of the pistol, heard its report and Swain screaming; that one of the men had Swain's horse by the bridle; headed him off, and then jammed him up against the fence; then they searched Swain, as well as he could see.  They then turned and ran back towards Greensboro.  There was much evidence by tracks, confessions, and otherwise, which it is not necessary to recapitulate, as the jury found it sufficient to identify the prisoners as the guilty parties, and there was no exception to the evidence except as herein stated.

The first five exceptions were to the admission of the testimony of Matt Rogers that he lived 200 or 300 yards beyond the bridge near which the murder occurred; that he drove a bay horse and top buggy and had been paid off the day of the murder, a little before noon, $125, by the railroad company, his employer, and to the testimony of R. A. Kirkman that the deceased drove a bay horse and a top buggy on his trips to town, and that the horse and buggy belonging to Rogers were like those of the deceased.  It is urged by the prisoners that this testimony was incompetent because it was not shown that the prisoners knew that Rogers was an employee of the railroad and was paid off on the 20th of the month.

It was not necessary to conviction that the State should prove motive. *S. v. McDowell,* 145 N. C., 566; 1 Wharton Cr. Law (11 Ed.), 594. The fact that railroad employees were paid off in Greensboro on the 20th of each month, and that Rogers was a railroad employee and traveled that road with a horse and buggy like those of the deceased were circumstances, in connection with other evidence, to be considered, for actual knowledge need not be shown where there was opportunity to be informed, as that there was general information in Greensboro, which was a railroad center, that railroad employees were paid off on the 20th

of each month. Besides, the witness Jackson testified that the prisoner Dorsett when in jail told him that they had "missed their man; that he had a bay horse," and added: "The man we were after was ahead of the man we got; the man we aimed to get was in front."

The prisoners except to an instruction of the court: "If you find from this evidence, the burden being on the State to so satisfy you beyond a reasonable doubt, that the prisoners lay in wait on the night of 20 January, 1915, and shot the deceased, and from that wound he died; if you find that they willfully and intentionally shot him, and that they lay in wait for that purpose, the court charges you that it would be your duty to find them guilty of murder in the first degree."

The objection is that there was no evidence of lying in wait. The precedents show that while being in ambush would be lying in wait, it is not necessary that a person should be concealed. The testimony here is that the prisoners were waiting and watching for the deceased, or rather for some one whom they took the deceased to be, and that it was after 6 o'clock on 20 January, so dark that the witness Rives testified that while he could see the forms of the men, he could not see them well enough to recognize them, and the witness Plunkett says that though he passed within 8 or 10 feet of them, he could not distinctly recognize them. Waiting on the side of the road in the dusk, when it is too dark to be recognized, for a man to shoot and rob is a sufficient "lying in wait" within the meaning of the charge of the court.

The court also charged the jury that it was their duty "to find the facts from the evidence, and there are only two verdicts you can render from the evidence in this case—a verdict of murder in the first degree, or a verdict of not guilty. There is no evidence of manslaughter; there is no evidence of murder in the second degree." In truth, the only question before the jury was as to the identity of the prisoners with the parties who committed the murder. If these were the men, they were guilty of murder in the first degree. Otherwise, they were not guilty. The jury upon the evidence submitted to them and under the charge of the court found beyond a reasonable doubt that the prisoners were the men who shot and killed John Swain.

Revisal, 3271, declares in part that the jury shall determine in their verdict whether the crime is murder in the first or second degree. In *S. v. Spivey,* 151 N. C., 676, the Court said: "When the entire evidence shows, and no other reasonable inference can be fairly drawn therefrom, that the murder was committed either by lying in wait or in an attempt to perpetrate a felony, and the controverted question is the identity of the prisoner as the murderer, the trial judge does not commit error in charging the jury to render a verdict of guilty of murder in the first degree or not guilty." To the same purport, *S. v. Covington,* 117 N. C., 834.

When the jury returned its verdict the foreman responded "Guilty." The court asked: "Guilty of what?" He replied: "Guilty of murder in the first degree." The prisoners then demanded a poll. When the name of each juror was called he answered with the single word, "Guilty." The prisoners did not ask for a fuller reply.

"The verdict must be taken in connection with the charge of his Honor and the evidence in the case." *S. v. Gilchrist,* 113 N. C., 673. When the foreman had responded to the interrogatory of the court that his reply of "guilty" meant guilty of murder in the first degree, the response of "guilty" by the other jurors must be taken to mean the same, especially under the circumstances of this case, where the court had instructed the jury to return a verdict "either of murder in the first degree or of not guilty," and when there was no evidence either of murder in the second degree or of manslaughter—as, indeed, the court had told them. Indeed, the brief of the prisoners seems to admit the correctness of the charge by the court, that the jury could convict of only one offense, that of murder in the first degree. The sole question was that of identity, and the foreman having responded, in reply to the inquiry from the bench, that the verdict which he had rendered for the jury meant guilty of murder in the first degree, the response of the rest of the jury, on being polled, that the prisoners were guilty, could have no other meaning. Any other interpretation would be a "refinement" and a miscarriage of justice.

No error.