STATE v. GEORGE FRANK BAZEMORE.

(Filed 16 March, 1927.)

**1. Homicide—Evidence—Identification.**

Upon the question of the identity of the defendant on trial for a homicide as the one who had committed the crime, the hesitancy of the witness to identify him, followed by his positive and unequivocal testimony that the prisoner was the one, is properly admitted over the defendant's exception.

**2. Homicide—Circumstantial Evidence—Nonsuit.**

A conviction of murder in the first degree may be had upon sufficient circumstantial evidence.

**3. Homicide—Murder in the First Degree—Presence of Judge—Constitutional Law.**

For a conviction of murder in the first degree under our statutes, C. S., 4200, 4642, the jury must find specifically under the evidence that this degree of crime has been committed by the defendant, and the verdict must be received in open court in the presence of the presiding judge under Constitutional Mandate, Const., Art. I, secs. 13, 17, which right may not be waived.

APPEAL by defendant from *Stack, J.,* at December Term, 1926, of GREENE.

Criminal prosecution tried upon an indictment charging the defendant with a capital felony, to wit, murder in the first degree.

From an adverse verdict and sentence of death entered thereon, the defendant appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*J. Paul Frizzelle for defendant.*

STACY, C. J. It appears from the State's evidence that on 5 November, 1926, Gordon Yelverton, a young white man, started from his home in Martin County with a truck-load of tobacco to be sold on the Wilson market. The prisoner, a colored man, was with him on the truck. Yelverton was shot in the back of the head and killed just inside the Greene County line on the Greenville-Wilson highway. His body was found in a clump of woods a short distance from the road. The prisoner proceeded with the truck of tobacco and sold the same as his own on the Farmville market. He was arrested three days later and placed in the Wilson County jail for safe-keeping. While there, a number of witnesses went to the jail to identify the prisoner. W. P. Daniels, over objection of the prisoner, testified as follows:

"I am chief of police in Williamston. I was called on to go to Wilson to identify George Frank Bazemore. I was accompanied by Sheriff Roberson and Mr. J. W. Hardy. I saw the defendant there. He was among others, I suppose twelve or fifteen, whose ages ranged from eighteen to thirty-five years. The sheriff called them out. Mr. Hardy said that when he was coming over to Wilson he didn't know whether he could identify the negro who had come into his store on the morning of 5 November with the white boy who was driving the truck or not, except that he had on a light hat. Speaking to the defendant, I said, 'George, go get your hat,' and he went and brought his hat. Mr. Hardy then said, 'that looks like the negro, but he hasn't got the hat fixed the same way.' He was in the habit of wearing it pushed in all 'round, and I said, 'George, fix your hat like you usually wear it,' and he did it. Then Mr. Hardy said, 'that's him; I would swear to him anywhere in the world.' "

This evidence was competent. *S. v. Godette,* 188 N. C., p. 503; *S. v. Graham,* 74 N. C., 646. J. W. Hardy had previously testified to the same state of facts.

The prisoner also insists upon his exception directed to the refusal of the court to grant his motion, duly made under C. S., 4643, for judgment as of nonsuit. The evidence, while largely circumstantial, was sufficient to carry the case to the jury and to warrant a conviction of murder in the first degree. *S. v. Melton,* 187 N. C., 481; *S. v. Matthews,* 66 N. C., 106.

We regret that this opinion cannot be closed here, for no error seems to have been committed on the trial of the cause prior to the rendition of the verdict. An irregularity, however, appears on the face of the record which makes it necessary to remand the case for a new trial. In the record as first certified to this Court, it is stated that the jury "for their verdict return into open court and say, and each for himself saith, that the defendant, George Frank Bazemore, is guilty of the felony and murder whereof he stands charged." Upon the verdict a sentence of death was entered. It was said in *S. v. Truesdale,* 125 N. C., 696, that since the Act of 1893, now C. S., 4200 and 4642, dividing murder into two degrees, first and second, a verdict which fails specifically to find the prisoner guilty of murder in the first degree will not support a death sentence. And to like effect is the decision in *S. v. Jefferson,* 125 N. C., 712. See, also, *S. v. Murphy,* 157 N. C., 614, and *S. v. Ross, ante,* 25. It was specified in the Act of 1893 that no alteration or modification of the then existing form of indictment for murder should be required, but that "the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree."

22—193

STATE *v.* BAZEMORE.

Thinking that an error had probably crept into the record in making up the transcript on appeal, we directed a *certiorari* to the clerk, requiring another certificate of the verdict as taken and recorded in the Superior Court of Greene County. In response, the clerk certifies that the following appears upon the minutes of the court:

"After hearing the evidence, both for the State and the defendant, the argument of the solicitor and counsel for the defendant, and his Honor's charge, the jury repaired to their room for deliberation, and the court takes a recess until 9:30 o'clock Thursday morning. The court leaves instruction that, if the jury agree, the clerk of the court shall take the verdict, conditioned on the solicitor and the defendant and his counsel being present in court at the time. At 8:10 o'clock the jury return into court, each juror answers to his name when called by the clerk, and when asked by the clerk, 'Have you all agreed upon your verdict?' the jury respond, 'We have.' The clerk asks, 'Who shall speak for you?' The jury answer, 'J. M. Albritton.' Then the clerk addressed the prisoner, George Frank Bazemore, 'Hold up your right hand.' The clerk said to the jury, 'Gentlemen of the jury, look upon the prisoner. What say you? Is he guilty of the felony and murder whereof he stands indicted or not guilty?' They say, 'Guilty of murder in the first degree.' The clerk then said to the jury, 'Hearken to your verdict as the court recordeth. You say that George Frank Bazemore is guilty of the felony and murder whereof he stands charged. So say you all?' The defendant and the defendant's counsel were present in court."

It is observed, in passing, but no point is made of the discrepancy, that when the jury were commanded to hearken to their verdict as the court recordeth, the expression "guilty of the felony and murder whereof he stands charged" was substituted for "guilty of murder in the first degree," as used by the foreman. Speaking to the manner of receiving verdicts in capital cases, *Faircloth, J.,* delivering the opinion of the Court in *S. v. Young,* 77 N. C., 498, said: "When the verdict has been received from the foreman and entered, it is the duty of the clerk to cause the jury to hearken to their verdict as the court has it recorded, and to read it to them and say, 'So say you all?' At this time any juror can retract on the ground of conscientious scruples, mistake, fraud, or otherwise, and his dissent would then be effectual. This right is surely one of the best safeguards for the protection of the accused, and as an incident to jury trials would seem to be a constitutional right, and its exercise is only a mode, more satisfactory to the prisoner, of ascertaining the *fact* that it is the verdict of the whole jury." In *S. v. Bagley,* 158 N. C., p. 610, it was held to be the duty of the presiding judge to look after the form and substance of a verdict so as to prevent a doubt-

ful or insufficient finding from passing into the records of the court. See, also, *S. v. McKay,* 150 N. C., 813, and *S. v. Godwin,* 138 N. C., 583.

But the overshadowing objection to the verdict is that it was not taken in the presence of the presiding judge at all. It was received by the clerk in his absence, presumably with the consent of the prisoner and his counsel, as no exception was taken at the time, though this does not definitely appear. However, without regard to this circumstance, it is the universal holding that, in capital cases, the verdict must be taken in the presence of the presiding judge and in open court. "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court." Const., Art. I, sec. 13. His Honor, therefore, was without authority, in the instant case, to delegate to the clerk the power to accept the verdict of the jury in his absence. *S. v. Jackson,* 21 S. D., 494, 16 Ann. Cas., 87, and note; *Allen v. State,* 13 Okla. Crim., 533; L. R. A., 1917 E, 1085, and note; *Waller v. State,* 40 Ala., 332; *Nomaque v. People,* 1 Ill., 145, 12 Am. Dec., 157; *McClure v. State,* 77 Ind., 287; *S. v. Jefferson,* 66 N. C., 309; 27 R. C. L., 841.

Animadverting on the subject in *S. v. Austin,* 108 N. C., 780, *Clark, J.,* said: "The defendants had the right to have the verdict rendered in the presence of the judge, and it is best that it should always be done. But it is certainly competent, except in capital cases, for it to be received by the clerk if no exception is made, and the opportunity is given the defendant to object, 'and such practice is very common.' *Pearson, C. J.,* in *Houston v. Potts,* 65 N. C., 41. Indeed, in all cases not capital the defendant may even waive his own right to be present, either expressly *(S. v. Epps,* 76 N. C., 55) or by voluntarily withdrawing himself from the jurisdiction of the court *(S. v. Kelly,* 97 N. C., 404; *S. v. Jacobs,* 107 N. C., 772), though his counsel cannot waive it for him. *S. v. Jenkins,* 84 N. C., 812."

The prisoner's motion for a new trial should have been allowed because of the irregularity in receiving the verdict in the absence of the judge. This was an inadvertence on the part of the learned judge who presided at the trial, but the right is one to which the prisoner is entitled under the law. His motion not having been allowed in the court below, it will be granted here.

But it may be said that no possible harm has come to the prisoner, and hence the verdict ought to be allowed to stand. The answer to this is, the Constitution provides that no person shall be "deprived of his life, liberty or property, but by the law of the land" (Const., Art. I, sec. 17), and the verdict, as here rendered, is not sanctioned by the law as administered in our courts. *S. v. Jackson, supra.*

New trial.