STATE OF NORTH CAROLINA v. VERNON CHARLES TALBERT

No. 19

(Filed 14 March 1973)

**Homicide § 31— first degree murder case — verdict of guilty as charged — new trial**

When, in a prosecution for homicide upon an indictment drawn under G.S. 15-144, the judge accepts a verdict of "guilty as charged" after having instructed the jury that it might return a verdict of guilty of murder in the first or second degree, or guilty of voluntary or involuntary manslaughter, such a general verdict does not establish the grade of homicide of which defendant was guilty and a new trial must be ordered.

Justice HIGGINS concurring.

APPEAL by defendant under G.S. 7A-27 (a) from *McConnell, J.*, September 1972 Criminal Session of ROWAN.

At the May 1972 Session of Cabarrus defendant was indicted for murder in the form prescribed by G.S. 15-144 (1965) as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH DO PRESENT, That Vernon Charles Talbert late of the County of

Cabarrus on the 5th day of May 1972, with force and arms, at and in the said county, feloniously, wilfully, and of his malice aforethought, did kill and murder Robert J. Eury contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

Upon defendant's motion the action was removed to Rowan County. There defendant was formally arraigned on 11 September 1972 and entered a plea of not guilty. The solicitor announced that the State was seeking a verdict of murder in the first degree, and the jury was selected in the manner usual in a capital case.

Evidence for the State tended to show: On 5 May 1972 defendant went to the home of his estranged girl friend, Pamela Morgan, at Midland in Cabarrus County, and stabbed her in the back with a carving knife as she fled toward the home of a neighbor. Deputy Sheriff Robert J. Eury, in response to a call, went to the Morgan home. Defendant, with pistol in hand, met him as he walked into the carport. After disarming Eury, defendant pointed two pistols at him and ordered him to crawl to his car. Eury dropped to the floor on his hands and knees, and defendant squatted on the floor beside him. Almost immediately one of the guns which defendant was holding fired. Eury was shot in the head and this shot caused his death. After Eury was killed defendant stood up, waved the two pistols, and fired several shots. He then went to Eury's car and, over its radio, said to the sheriff's office dispatcher, "I shot and killed the son of a bitch. Now come and get me. He deserved to die." At this point Deputy Sheriff Compton arrived and, over his own radio, told defendant to stop transmitting and come out. Leaving the two pistols in Eury's car, defendant came out with his hands on the back of his head.

Defendant testified that killing Eury was an accident; that while squatting in the carport, he lost his balance and, in attempting to regain it, he accidentally squeezed the trigger of one of the guns. He admitted using the sheriff's radio, but he denied calling Eury a son of a bitch and saying that he deserved to die.

In charging the jury Judge McConnell, *inter alia*, gave the following instruction:

"Under the law and evidence in this case it is your duty to return one of the following verdicts: guilty of first degree

murder; or guilty of first degree murder with a recommendation that the punishment be life imprisonment; or guilty of second degree murder; or guilty of voluntary manslaughter; or guilty of involuntary manslaughter; or not guilty."

The judge also charged, as provided in G.S. 14-17 (1969), that if the verdict was guilty of murder in the first degree defendant's punishment would be death unless the jury accompanied their verdict with a recommendation that defendant's punishment be imprisonment for life in the State's prison.

The verdict returned was "guilty as charged." At defendant's request the jury was polled, and each juror "answered that defendant was 'guilty as charged.' "

Upon this verdict Judge McConnell sentenced defendant to death. The death sentence, in writing as required by G.S. 15-189 (1965) and signed 14 September 1972, recited that the jury had "returned against [defendant] *a verdict of guilty of murder in the first degree* as charged in the bill of indictment." (Italics ours.)

Defendant gave notice of appeal to the Supreme Court, and Judge McConnell entered an order requiring the State of North Carolina to pay the cost of the appeal.

*Attorney General Morgan; Assistant Attorney General O'Connell for the State.*

*Burke & Donaldson for defendant appellant.*

SHARP, Justice.

Defendant's assignment of error No. 13 is that "the court erred in entering the judgment as it appears of record." This assignment must be sustained, for—as defendant asserts—the verdict, "guilty as charged," will not support a sentence for murder in the first degree in this case. Therefore, the verdict and judgment must be set aside and the case remanded for trial de novo.

Prior to 1893 there were no degrees of murder in North Carolina. Any unlawful killing of a human being with malice aforethought was murder and punishable by death. By Sections One and Two of N. C. Sess. Laws, Ch. 85 (1893) (now G.S. 14-17) murder was divided into two degrees. By Section Three it was provided that the division should not "be construed to

require any alteration or modification of the existing form of indictment for murder, but the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree." Section Three is now G.S. 15-172 (1965). "The existing form of indictment," to which this section referred, was prescribed by N. C. Sess. Laws, Ch. 58 (1887) and is now G.S. 15-144 (1965).

An indictment for homicide in the words of G.S. 15-144 will support a verdict of murder in the first degree, murder in the second degree, or manslaughter. *See State v. Duncan,* 282 N.C. 412, 193 S.E. 2d 65 (1972); *State v. Mays,* 225 N.C. 486, 35 S.E. 2d 494 (1945); *State v. Gilchrist,* 113 N.C. 673, 18 S.E. 319 (1893).

In requiring the jury to determine the degree of homicide of which defendant is guilty, G.S. 15-172 merely codified the well established rule that a verdict which leaves the matter in conjecture will not support a judgment. *State v. Fuller,* 270 N.C. 710, 155 S.E. 2d 286 (1967); *State v. Albarty,* 238 N.C. 130, 76 S.E. 2d 381 (1953). When, in a prosecution for homicide upon an indictment drawn under G.S. 15-144, the judge accepts a verdict of "guilty as charged" after having instructed the jury that it might return a verdict of guilty of murder in the first or second degree, or guilty of murder in either degree or manslaughter, "such a verdict on such an indictment" cannot be sustained. *State v. Truesdale,* 125 N.C. 696, 34 S.E. 646 (1899). In such case the verdict is a general one without a response as to what grade of homicide the defendant was guilty, and a new trial must be ordered. *State v. Jefferson,* 125 N.C. 712, 34 S.E. 648 (1899). *See also State v. Bazemore,* 193 N.C. 336, 137 S.E. 172 (1927); *State v. Ross,* 193 N.C. 25, 136 S.E. 193 (1927).

In *State v. Fuller, supra,* defendant was charged with murder in an indictment under G.S. 15-144. When the case was called for trial the solicitor announced that he did not seek a verdict of guilty of murder in the first degree but asked for a verdict of guilty of murder in the second degree or manslaughter, as the evidence might show. Upon a verdict of "guilty as charged" the judge imposed a sentence of 25-30 years. In ordering a new trial, this Court said, "From the sentence imposed, it is apparent that the Court considered it as a verdict of guilty of murder in the second degree. However, under these conditions, the matter should not be left to conjecture or surmise, and

the Court should have required the jury to be more specific." *Id.* at 715, 155 S.E. 2d at 289.

Verdicts of "guilty as charged" in prosecutions under G.S. 15-144 have been held sufficient to support the judgment when the judge has instructed the jury to return a verdict of murder in the first degree or not guilty and there was no evidence to warrant a verdict of guilty of murder in the second degree or manslaughter. In such a situation the verdict will be taken with reference to the charge and the evidence in the case and interpreted as a verdict of guilty of the only charge submitted. *State v. Wiggins,* 171 N.C. 813, 89 S.E. 58 (1916); *State v. Walker,* 170 N.C. 716, 86 S.E. 1055 (1915); *State v. Gilchrist, supra.* This holding is an application of the general rule that "[a] verdict apparently ambiguous 'may be given significance and correctly interpreted by reference to the allegations, the facts in evidence, and the instructions of the court.' " *State v. Thompson,* 257 N.C. 452, 457, 126 S.E. 2d 58, 61-62, *cert. denied,* 371 U.S. 921 (1962). *See also State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453 (1967), *rev'd on other grounds,* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2278 (1971); *State v. Morris,* 215 N.C. 552, 2 S.E. 2d 554 (1939).

A verdict is not complete until it is accepted by the court, and it is the duty of the judge to require the jury to specify the crime of which they found defendant guilty. *See State v. Bagley,* 158 N.C. 608, 73 S.E. 995 (1912) and *State v. Lucas,* 124 N.C. 825, 32 S.E. 962 (1899), two cases in which this was done. As Justice (later Chief Justice) Hoke said in *State v. Bryant,* 180 N.C. 690, 692, 104 S.E. 369, 370 (1920), "[W]e deem it not amiss to again admonish the profession and officials . . . that the verdict should be rendered in the precise form that the statute requires; that is, to specify in terms of the degree of the crime of which the prisoner is convicted."

Had the verdict in this case been an unambiguous one of guilty of murder in the first degree, there being no error in the trial prior thereto, we would have disposed of the appeal by vacating the death sentence and directing the superior court to impose a life sentence in accordance with the procedure detailed in *State v. Hill,* 279 N.C. 371, 183 S.E. 2d 97 (1971). However, such a disposition is not possible.

The sentence of death imposed upon defendant seems to call for some comment. We note, therefore, that on 29 June 1972, approximately two and one-half months before defendant

was put on trial for his life at the September 1972 Session, the Supreme Court of the United States had decided *Furman v. Georgia, Jackson v. Georgia,* and *Branch v. Texas,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726. In each of these three cases, hereinafter referred to collectively as *Furman,* the defendant appealed a death sentence imposed under a statute similar to our G.S. 14-17. The Supreme Court held (four justices dissenting) that the death sentence imposed under statutes permitting either judge or jury to impose that penalty as a matter of discretion, constituted cruel and unusual punishment and violated the Eighth and Fourteenth Amendments to the United States Constitution. The judgment in each case was reversed only "insofar as it [left] undisturbed the death sentence imposed," and the cases were remanded "for further proceedings."

The *Furman* decision necessarily invalidated any death sentence imposed under G.S. 14-17 as then constituted. This section, as rewritten by the legislature in 1949, made death the punishment for first degree murder but provided (1) that if the jury so recommended at the time of rendering its verdict, the punishment would be imprisonment for life in the State's prison; and (2) that the judge should so instruct the jury. Judge McConnell so instructed. This Court had construed that proviso to leave to the jury's "unbridled discretion" the question whether a convict's sentence should be life or death. *State v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212 (1951).

Obviously, at the time of the trial of this case the *Furman* decision had not come to the attention of the trial judge and the solicitor. Since then, on 18 January 1973, in *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19 (1973), this Court (three justices dissenting) held that the effect of *Furman* upon G.S. 14-17 was (1) to invalidate its proviso—as well as the identical proviso in G.S. 14-21 (rape), G.S. 14-51 (burglary), and G.S. 14-58 (arson)—, and (2) to make death the penalty for murder in the first degree, burglary in the first degree, rape, and arson. However, recognizing that this interpretation made an upward change in the penalty for these four crimes, the decision in *Waddell* was made to apply prospectively only. Thus, it is inapplicable to any such offense committed prior to 18 January 1973. It follows that if defendant should be convicted of murder in the first degree upon his second trial his sentence will be imprisonment for life.

New trial.

State v. Talbert

Justice HIGGINS concurring.

In 1893 (Chapter 85, Acts of Assembly) provision was made for the division of murder into first and second degrees. Prior thereto, by Chapter 58, Session Laws of 1887, the General Assembly prescribed the form of indictment in homicide and provided that the charge include manslaughter. This Court has continuously held that indictments so drawn include murder in the first degree and murder in the second degree as well as manslaughter. Hence, in a trial for murder it is necessary for the jury to specify whether the finding of guilt is of murder in the first degree or murder in the second degree because both are charged in the bill. A verdict "guilty as charged" is incomplete as the Court now holds.

However, if the indictment contains the additional averments that the killing was premeditated and deliberate, or in the perpetration or the attempt to perpetrate one of the named felonies, then I think a verdict "guilty as charged" would be complete and would authorize the court to proceed to judgment.