An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-170

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

IN THE MATTER OF:                    Haywood County
                                     Nos. 12-JT-95, 12-JT-96
   K.M.S., K.A.S.,
   Juveniles.


Appeal by respondent from order entered 24 October 2013 by Judge Donna F. Forga in Haywood County District Court. Heard in the Court of Appeals 16 June 2014.

> *Rachael J. Hawes for petitioner-appellee Haywood County Department of Social Services.*

> *Nelson Mullins Riley & Scarborough LLP, by Wallace C. Hollowell, III, for guardian ad litem.*

> *Robert W. Ewing for respondent-appellant.*


HUNTER, JR. Robert N., Judge.


Respondent is the father of K.M.S. ("Keith"), K.A.S. ("Kristin"), and a third child, "John,"[1] who is deceased. Respondent appeals from an order terminating his parental rights to Keith and Kristen. At the time of the hearing on the

---

[1] Names are pseudonyms adopted by the parties for confidentiality and ease of reading.

petition to terminate parental rights, respondent was incarcerated awaiting trial on charges of first degree murder, felony child abuse with serious bodily injury, and possession of a firearm by a felon. The charges of first degree murder and felony child abuse arose out of fatal injuries to John, who had a different mother than Keith and Kristin. Keith and Kristin's mother relinquished her parental rights to them at the close of the evidence.

The juvenile proceeding at bar was set in motion on the night of 16 August 2012 when respondent called 911 to report that his son was not breathing. The first responders to arrive at respondent's residence found John lying on the floor in a hallway. They observed that John was not breathing, his pulse was very weak, and his color was yellowish-blue. John was transported by helicopter to Mission Hospital in Asheville but he died en route. Keith and Kristen were present in the home with their parents that night.

Nonsecure custody of Keith and Kristen was granted to the Haywood County Department of Social Services ("DSS") the following morning. They were adjudicated abused, neglected, and dependent juveniles on 12 March 2013 based largely upon findings that John was beaten by respondent on multiple occasions,

including the night of his death, and that Keith and Kristen's mother was aware of the beatings but failed to intervene or report them. On the same date, the permanent plan was changed to termination of parental rights and adoption.

DSS filed petitions to terminate parental rights on 13 May 2013. After conducting an evidentiary hearing over the course of two days, the court filed an adjudication order on 15 October 2013 concluding the following grounds existed for termination of respondent's parental rights: (1) pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), respondent has neglected the children; (2) pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), respondent has willfully abandoned the children for at least six consecutive months immediately preceding the filing of the petitions; and (3) pursuant to N.C. Gen. Stat. § 7B-1111(a)(8), respondent murdered the minor children's half-sibling and the murder was not committed in self-defense, defense of others, or with any other justification. On the same date, the court filed a disposition order concluding that it was in the best interest of the juveniles to terminate respondent's parental rights. The court accordingly terminated respondent's parental rights. On 24 October 2013, the court filed an amended disposition order

correcting clerical mistakes. Respondent filed timely notice of appeal from the amended order on 22 November 2013.

We review a court's order terminating parental rights to determine whether the findings of fact are supported by clear, cogent, and convincing evidence and whether the conclusions of law are supported by the findings of fact. *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004). We conduct *de novo* review of the court's conclusions of law. *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009). Furthermore, we need not review every ground for termination of parental rights concluded by the trial court to exist if we determine one of the grounds is supported by the findings of fact. *In re Parker*, 90 N.C. App. 423, 424, 368 S.E.2d 879, 880 (1988).

Parental rights may be terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(8) if:

> [t]he parent has committed murder or voluntary manslaughter of another child of the parent or other child residing in the home; has aided, abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of the child, another child of the parent, or other child residing in the home; has committed a felony assault that results in serious bodily injury to the child, another child of the parent, or other child residing in the home; or has committed murder or voluntary manslaughter of the

other parent of the child. The petitioner has the burden of proving any of these offenses in the termination of parental rights hearing by (i) proving the elements of the offense or (ii) offering proof that a court of competent jurisdiction has convicted the parent of the offense, whether or not the conviction was by way of a jury verdict or any kind of plea.

N.C. Gen. Stat. § 7B-1111(a)(8) (2013). The adjudication order at bar contains the following conclusions of law:

7. There are sufficient grounds to terminate the parental rights of the Respondent Father, pursuant to N.C.G.S. 7B-1111(a)(8), in that he committed murder of the minor children's 4 year old half-sibling and the murder was not committed in self defense or in the defense of others or with any other justification.

8. The Respondent Father committed murder of another child of the Parent or other child residing in the home in that he did unlawfully, willfully, and feloniously, and of malice aforethought did kill and murder [John]. The Respondent Father did show malice in his actions in that he intentionally inflicted wounds on [John] that resulted in [John's] death.

9. In the alternative, the Respondent Father committed murder of another child of the Parent or other child residing in the home in that he did unlawfully kill another human being, to wit [John], with malice but without premeditation or deliberation. The Respondent Father did show malice in his actions in that he intentionally inflicted wounds on [John] that resulted in [John's] death.

10. In the alternative, that the Respondent Father committed voluntary manslaughter of another child of the Parent or other child residing in the home in that he did unlawfully kill another human being, to wit [John], without malice and without premeditation or deliberation.

11. The Respondent Father committed felony child abuse on [John] in that he was a Parent or person providing care or supervision to a child less than 16 years of age, to wit [John], [and] who intentionally inflicted serious physical injuries upon that child and who intentionally committed an assault upon that child which resulted in serious physical injuries to that child. In committing the offense, the Respondent Father used his hands, feet, and belt in such a manner as to constitute a deadly weapon.

Respondent contends the trial court erred by concluding that he committed first degree murder, second degree murder, voluntary manslaughter, and felony child abuse based upon the same transaction. He argues the court could not properly conclude that he committed all of these offenses because elements of these offenses materially conflict with each other.

Given that N.C. Gen. Stat. § 7B-1111(a)(8) requires the juvenile court to make a finding that the parent perpetrated one of the listed criminal offenses, we look to our criminal jurisprudence for guidance in addressing respondent's argument. We note that "a defendant may be found guilty of multiple crimes

arising from the same conduct so long as each crime requires proof of an additional or separate fact." *State v. James*, 182 N.C. App. 698, 704, 643 S.E.2d 34, 38 (2007). A defendant tried upon an indictment "may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime." N.C. Gen. Stat. § 15-170 (2013). If an appellate court subsequently "finds that the evidence with regard to a charge is insufficient as a matter of law, the judgment must be reversed and the charge must be dismissed unless there is evidence to support a lesser included offense." N.C. Gen. Stat. § 15A-1447(c) (2013). If there is evidence to support a lesser offense, N.C. Gen. Stat. § 15A-1447(c) provides for a new trial on the lesser offense as an available form of relief. *Id.* However, our Supreme Court recently reiterated that an appellate court may alternatively remand for entry of judgment on the lesser offense if, in finding a defendant guilty of the greater offense, the jury necessarily found the existence of the elements of the lesser offense. *State v. Stokes*, ___ N.C. ___, ___, 756 S.E.2d 32, 36–38 (2014).

To charge a person with homicide, an indictment

> is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed) . . . and it is sufficient in describing manslaughter to allege that the accused feloniously and willfully did kill and slay (naming the person killed) . . . and any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for murder or manslaughter, as the case may be.

N.C. Gen. Stat. § 15-144 (2013). "An indictment for homicide in the words of G.S. § 15-144 will support a verdict of murder in the first degree, murder in the second degree, or manslaughter." *State v. Talbert*, 282 N.C. 718, 721, 194 S.E.2d 822, 825 (1973). Second degree murder, voluntary manslaughter, and involuntary manslaughter are lesser included offenses of first degree murder. *State v. Thomas*, 325 N.C. 583, 591, 386 S.E.2d 555, 559 (1989).

In comparison, the offense of felony child abuse contains additional or different elements. A person is guilty of felony child abuse if the person is the parent of a child less than 16 years of age and the person "intentionally inflicts any serious physical injury upon or to the child or . . . intentionally commits an assault upon the child which results in any serious physical injury to the child." N.C. Gen. Stat. § 14-318.4(a)

(2013). Serious physical injury is a physical injury "that causes great pain and suffering" and "includes serious mental injury." N.C. Gen. Stat. § 14-318.4(d)(2).

We conclude that by phrasing its conclusions of law "[i]n the alternative," the court sought to inform a reviewing court that it found respondent committed the elements of two lesser offenses of first degree murder—namely, second degree murder and voluntary manslaughter—should the appellate court determine that the evidence did not support a verdict of first degree murder but did support a verdict upon one or more of the lesser offenses. The court also informed the appellate court that it found respondent committed felony child abuse, a separate criminal offense. We accordingly overrule respondent's argument that the conclusions of law are inconsistent.

We now examine the findings of fact at bar and determine whether they support the court's conclusion that defendant murdered John. We are bound by findings of fact "where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery,* 311 N.C. 101, 110–11, 316 S.E.2d 246, 252-53 (1984). Findings of fact are also binding if they are not challenged on

appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

Here, respondent does not challenge findings of fact indicating that an autopsy revealed that John had multiple bruises over his body, particularly his face, back, buttocks, arms, and legs. The bruises had been inflicted over a course of several days, the oldest bruising being four days old and the freshest being less than four hours old. The injuries to his buttocks were linear, suggesting they had been inflicted by some sort of cylindrical object such as a belt that would whip the skin. John had lacerations in the upper and lower portion of the inside of his mouth on his lips. Altogether, John had 64 separate injuries to his body.

When confronted by investigators about inconsistencies between her statements and respondent's, Keith and Kristen's mother admitted that John had been staying with them for a month, though the respondent had instructed her to say the prior Friday. On Sunday or Monday, 12 or 13 August, respondent beat John with a belt and belt buckle leaving bruises on the child's buttocks. After this incident, she saw respondent take John into a bedroom. Before John went into the bedroom, he did not have any bruises on his face. She heard respondent beating

John's head into the wall. When John came out of the bedroom, he had bruising on his face. After this incident, respondent beat John again with a belt and belt buckle. On the night of John's death, respondent took the boy into the bathroom. She heard respondent tell the boy to put his head under the faucet. She did not hear anything else until she heard respondent yelling at her to call 911.

The autopsy disclosed that John died as a result of subdural hematomas and brain swelling due to one or a series of blunt force injuries to the head. The pathologist who performed the autopsy opined that the child's injuries were consistent with a statement given by Keith and Kristen's mother indicating that respondent beat the child on multiple occasions over a span of several days using a belt, a belt buckle, and slamming the child's head into a wall. The pathologist found a pattern bruise on John's left temple that strongly resembled the shape of a belt and buckle seized from respondent. The pathologist also discovered at least two traumatic brain injuries, one occurring days prior to John's death and the other occurring at the time of death.

Although respondent had reported that the child had fallen in the bathtub, the first responders noted that John was

completely dry and his body and feet were dirty. They also noted that the towel on the floor was dry. Respondent also made other inconsistent or conflicting statements to EMS and law enforcement personnel.

We conclude that the foregoing findings support a conclusion of law that respondent murdered John and committed felony child abuse by intentionally and repeatedly inflicting injuries to the boy's body and to his head over the course of a few days leading to John's death. Because we hold the findings of fact support termination of parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(8), we need not consider respondent's arguments concerning the other grounds of neglect and abandonment.

The adjudication and disposition orders terminating respondent's parental rights are affirmed.

AFFIRMED.

Chief Judge MARTIN and Judge ELMORE concur.

Report per Rule 30(e).