STATE v. JUNIUS McKAY.

(Filed 24 March, 1909.)

**1. Murder—Evidence, Circumstantial—Sufficiency.**

When circumstantial evidence points clearly to the guilt of the one accused of murder, and is sufficiently strong to convince the jury, a conviction of murder will be sustained.

**2. Same.**

Defendant's repeated threats to kill deceased, his following deceased, armed with brickbats, and when deceased was last seen, 8 or 9 o'clock at night, defendant was thus following him on a certain street, saying he would get him if he could come up with him, taken in connection with the testimony that the next day a brickbat with hair and blood stains on it were found on that street, and some five weeks thereafter deceased's body was found hidden in a hole, is sufficient evidence of the actual killing by premeditation to sustain a verdict of murder in the first degree.

**3. Same—Bad Feeling—Malice Presumed—Deadly Weapon.**

Evidence that defendant had repeatedly threatened to kill deceased, and when last seen was following him with brickbats and threatening him, and that deceased was killed with some blunt instrument, a deadly weapon, is sufficient upon the questions of bad feelings and malice to sustain a verdict of murder in the first degree.

**4. Murder—Evidence—Manslaughter—Instructions.**

When there is no evidence of manslaughter it is correct for the judge to charge the jury, upon competent evidence, to return a verdict of murder in the first or second degree, or not guilty, against the defendant, tried for the unlawful killing of deceased.

**5. Murder—Verdict—Polling Jurors—Power of Court—Retirement—Proper Verdict.**

Upon the returning of a verdict of guilty of murder in the first degree, "with mercy," it is not error for the judge, in open court, upon polling the jurors and finding that only one recommended mercy, to direct the jury to retire and bring in a proper verdict.

6. Murder—Verdict—Guilty, with Recommendation for Mercy—
    Surplusage.

    The words used by the jury in their verdict to recommend
    mercy are merely surplusage and do not vitiate or affect the
    verdict.

Indictment for murder, tried before *Biggs, J.,* and a jury, at
November Term, 1908, of Robeson.

The prisoner was convicted and sentenced to death. From
the judgment of the court he appealed.

*Attorney-General* for the State.
*Robert E. Lee* for defendant.

Brown, J. A careful review of the record in this case dis-
closes no just ground for awarding to the prisoner another trial.

Exception 1. It is contended by the prisoner that there is no
evidence of murder in the first degree. The evidence adduced
against the prisoner is circumstantial in its character, but that
species of evidence is sufficient to convict, where it points clearly
to the guilt of the accused and is sufficiently strong to fully con-
vince the jury.

The evidence tends to prove that deceased, one Alex. McKay,
was killed by a blow on his head with some heavy instrument,
on the night of 23 February, and his body secreted in a hole,
some three hundred yards from the place where he was killed,
on a side street in the town of Rowland. The prisoner repeat-
edly threatened to kill deceased on the night aforesaid, charg-
ing that he was a liquor spy, and followed him around, armed,
with brickbats. The deceased was last seen alive going along
a side street, between 8 and 9 o'clock P. M., the prisoner fol-
lowing him, saying he would get him if he could come up with
him. The next morning the hat of deceased, with a brickbat
with hair and blood stains on it, were found on the side street,
and some five weeks thereafter the body of deceased was found
in the hole aforesaid. The evidence is voluminous, and it is
noticeable that there is no exception taken by prisoner to any
part of it.

In charging the jury upon the character of circumstantial

evidence, and as to its probative force, the learned judge gave the prisoner's prayer for instructions, and followed carefully well-established rulings of the court.

We think there is ample evidence to connect the prisoner with the actual killing, as well as to show that it was the result of premeditated design, and that it was properly submitted to the jury, accompanied with clear, careful and correct instructions.

Exception 2. The court substantially gave the prisoner's instruction, and we are unable to see any difference between the prayer and the instruction given.

Exception 3. The defendant requested the court to charge: "There being no evidence in this case of any bad feeling existing between the prisoner and the deceased, the jury cannot return a verdict of murder in the first degree." There is abundant evidence of "bad feeling," if such evidence is necessary, and, besides, there is evidence that the homicide was committed with some kind of an instrument which may have been deadly in its character, and from the use of which malice may be presumed. *State v. Booker,* 123 N. C., 713; *State v. Adams,* 136 N. C., 617.

Exceptions 4 and 5. The instructions of his Honor explaining what constitutes murder in the first degree are in line with all the opinions upon the subject rendered by this Court since the statute dividing murder into two degrees was passed.

Exception 6. The court further instructed the jury that they should return a verdict of murder in the first degree, murder in the second degree, or not guilty. There was no evidence in the case to reduce the crime to manslaughter, and therefore it would have been improper for the judge to have submitted to the jury a view of the case unsupported by any testimony whatever. *State v. Hicks,* 125 N. C., 636; *State v. White,* 138 N. C., 704.

Exception 7. The jury came into court in a body, and announced, through their foreman, that they had agreed upon a verdict. The foreman then announced, "Guilty of murder in the first degree, with mercy." On the request of counsel for the prisoner, the jury was polled, and one juror answered, "Murder in the first degree, with mercy," and the other eleven jurors answered, "Murder in the first degree." The court, immediately thereupon, in open court, in the presence of prisoner, directed

STATE *v.* McKAY.

the jury to retire and bring in a proper verdict, and in doing so gave instructions, of which the prisoner certainly has no reason to complain. The jury retired, and later returned and rendered a verdict that the prisoner, Junius McKay, was guilty of murder in the first degree. At the request of the prisoner's counsel, the jury was again polled, and all answered, "Guilty of murder in the first degree." The exception is to the refusal of the court to accept the verdict of murder in the first degree, with mercy, tendered by the jury. We do not think the added words, "with mercy," vitiated the verdict, had it been so received. Those words simply amounted to a recommendation for mercy, and did not leave in doubt the character of the verdict rendered. They were mere surplusage and no part of the verdict. It was plainly a conviction of murder in the first degree, and so intended by the jury. The course his Honor took was the prudent one, and in no manner prejudiced the prisoner, but gave him another chance. It was fully warranted by what is said in *State v. Godwin,* 138 N. C., 583, and cases there cited. In that case the Court says: "Before a verdict returned into open court by a jury is complete it must be accepted by the court for record. It is the duty of the judge to look after the form and substance of a verdict, so as to prevent a doubtful or insufficient finding from passing into the records of the court. For that purpose the court can, at any time while the jury are before it or under its control, see that the jury amend their verdict in form so as to meet the requirements of the law. When a jury returns an informal, insensible or a repugnant verdict, or one that is not responsive to the issues submitted, they may be directed by the court to retire and consider the matter and bring in a proper verdict—that is, one in proper form."

Upon a review of the record we find

No Error.