### STATE v. CLARENCE RAY RHINEHART.

#### (Filed 16 June, 1966.)

**1. Criminal Law § 103—**

The dismissal by the court of a count in the indictment will be treated as a verdict of not guilty on that count.

**2. Criminal Law § 143—**

In this jurisdiction, a defendant has the unlimited right of appeal from a conviction in a criminal case, and this right is a substantial right which may not be denied or circumscribed. G.S. 15-180.

**3. Criminal Law § 135—**

While the trial court has discretionary power to suspend sentence in criminal cases upon reasonable conditions, a condition of suspension that defendant abandoned his appeal entered by him in another prosecution is an unlawful limitation upon his right to appeal and is void, and the judgment of suspension in the second prosecution will be stricken and the cause remanded for resentencing in that prosecution.

**4. Criminal Law § 139—**

The fact that a defendant is on parole at the time of his application for *certiorari* does not affect his right to review by the Supreme Court, since

STATE *v.* RHINEHART.

conditions of parole are a restraint upon his liberty not shared by the public generally.

**5. Criminal Law § 120—**

A defendant has a substantial right in a verdict, and while a verdict is not complete until accepted by the court for record, the court does not have an unrestrained discretion in accepting or rejecting a verdict, and must accept a verdict which is complete and sensible.

**6. Criminal Law § 117—**

The verdict and judgment in a criminal action should be clear and free from ambiguity or uncertainty.

**7. Same—**

Where prosecutions of two defendants are consolidated for trial, the jury's verdict of guilty, in response to interrogation as to whether the jury found the defendants or either of them guilty or not guilty, is ambiguous in failing to make clear whether the jury found both defendants guilty or only one of them.

**8. Same—**

A verdict of not guilty as to one charge but guilty in regard thereto of aiding and abetting, is not ambiguous, and is a verdict of not guilty, the words "guilty of aiding and abetting" are not a part of the legal verdict and must be treated as surplusage. In such instance the court must accept the verdict of not guilty and may not require the jury to redeliberate.

**9. Criminal Law § 118—**

Where the jury returns a verdict of not guilty upon one count but adds the surplusage of guilty of aiding and abetting therein, and a verdict of guilty upon a second count, and the jury is erroneously required to redeliberate in regard to its verdict on the first count, and then returns a verdict of guilty on the first count without any reference to the second count, its action cannot be construed as an acquittal upon the second count, since under such circumstances the rule that a verdict which fails to refer to a count amounts to an acquittal upon such count is not applicable.

**10. Criminal Law § 131—**

Where the judgment and sentence are set aside and the cause remanded for proper sentence, defendant will be given credit for time served with full credit for any good time he has earned while serving the sentence.

**11. Criminal Law § 147—**

Where the solicitor does not serve any countercase or exceptions to defendant's statement of case on appeal, defendant's statement becomes the case on appeal. G.S. 1-282.

MOORE, J., not sitting.

DENNY, E.J., and PLESS, J., took no part in the consideration or decision of this case.

ON *certiorari* from *Huskins, J.,* February 1963 Term of HAY-WOOD.

At the February 1963 Term of the Superior Court of Haywood County the State had an indictment against defendant Clarence Ray Rhinehart in three counts: The first count charged defendant Rhinehart on 13 December 1962 with feloniously breaking and entering a building occupied by Biltmore Dairy Farms, a corporation, with intent to commit larceny of the personal property therein of the Biltmore Dairy Farms, a corporation; the second count charged defendant Rhinehart on the same date with the larceny of lawful money of the United States of the value of $421, the property of Biltmore Dairy Farms, a corporation; and the third count charged defendant Rhinehart on the same date with feloniously receiving $421 of the lawful money of the United States, the property of Biltmore Dairy Farms, a corporation, knowing at the time that the said money had been feloniously stolen. At the same term of the Superior Court of Haywood County the State had a separate indictment in three counts charging one James West with the identical offenses charged in the indictment against defendant Rhinehart. The indictments against Rhinehart and West were consolidated for trial. Defendants were represented by Charles McDaris and Frank Ferguson. Each defendant entered a plea of not guilty, and a jury was duly selected, sworn and empaneled to try the issues joined between the State and the defendants.

The State's evidence in brief summary tends to show the following facts: On 13 December 1962 Biltmore Dairy Farms, a corporation, owned and operated a dairy bar at Lake Junaluska in Haywood County, where it sold milk shakes and sandwiches. On that night between 8:30 and 8:45 p.m. defendants Rhinehart and West and one James Clark came to the Biltmore Dairy Bar at Lake Junaluska in Rhinehart's automobile, went in, and bought milk shakes, sandwiches, and cigarettes. A few minutes thereafter they left together in Rhinehart's automobile. Shortly after 9 p.m. the employees of the Biltmore Dairy Bar working in the Dairy Bar that night placed the money they had in a safe. The safe was locked. They cut off the lights, locked the doors, and left. The safe is located in the manager's office. When the Dairy Bar was closed and the doors locked, there was in the safe $580.04 in cash money of the United States and a large number of checks, the property of Biltmore Dairy Bar.

James Clark, who was in jail waiting to be sentenced, testified as a witness for the State. This is a brief summary of his testimony, except when quoted: On 13 December 1962 he and defendant Rhinehart were together all day. About 3:30 p.m. on that day he and

Rhinehart in Rhinehart's automobile picked up defendant West. During that afternoon and the early evening of that day the three of them rode around in Rhinehart's automobile in Buncombe, Haywood, and Jackson Counties. About 8:30 p.m. they stopped at the Biltmore Dairy Bar at Lake Junaluska. The three of them went into this Dairy Bar and each got a sandwich and a drink and cigarettes. While they were in the Dairy Bar there was a man in one of the back offices working with a calculating machine or some sort of machine, and they figured they were counting the money. One of them said "how easy it would be to get the money out of there. . . . We discussed how much money there might be in there and how easy it would be to get it." Then all three left the Dairy Bar, got in Rhinehart's automobile, and left. They drove around in the vicinity of the Dairy Bar, Clark driving the Rhinehart automobile. Clark testified as follows: "We had talked over who was going to do what. Rhinehart was to get in the phone booth and me and West was to go in and get the money." In circling around in the vicinity, they saw that the Dairy Bar was closed with the lights out. They returned and parked near the Dairy Bar. Rhinehart went in the telephone booth. He and West went to the back of the Dairy Bar and broke in a back door. They prized or broke through other doors, locked or unlocked, in the Dairy Bar. After searching in a number of offices and drawers and desks and finding nothing, they finally found the safe. They were hunting for money. He found a piece of iron and prized and opened the safe door. He and West took all the contents out of the safe and carried them to the automobile. When they arrived there, Rhinehart asked Clark how much money they got and he told them he had not looked. At that time Rhinehart began driving his automobile and headed towards Asheville. In Asheville they hit Smathers Street, crossed Hyatt Street on to Little Mountain. There they stopped and opened the bags containing the money. There was enough money to give to each one of them $137 apiece. There was about ten dollars in change which they did not divide at this time. They found in the bags about $5,000 in checks.They took these checks and bags containing the money and checks, and burned them.

Each defendant testified in his own behalf. Their testimony and their other evidence in brief summary tends to show the following facts: The defendants and James Clark about 8:30 p.m. on that night stopped at the Biltmore Dairy Bar at Lake Junaluska. Nothing was said there about how easy it would be to get the money belonging to the Dairy Bar, and no plan was made to come back and take it. The three of them did not return later that night to the Dairy Bar. West and Rhinehart were elsewhere that night and

know nothing about any breaking into the Dairy Bar or the stealing of money and checks therefrom.

The court at the beginning of its charge to the jury stated in substance: The defendants West and Rhinehart are charged in indictments which have been consolidated for trial with breaking and entering the Biltmore Dairy Bar in Haywood County on the night of 13 December 1962, and with the larceny of $421 lawful money of the United States from that establishment. They are also charged in the indictments with receiving stolen property, to wit, $421 lawful money of the United States knowing it to have been stolen. There is no evidence in the case to sustain the charge of receiving stolen property knowing it to have been stolen, and those charges are dismissed by the court against these two defendants. The case will be submitted to the jury on the charges of breaking and entering and larceny of money from the Biltmore Dairy Farms on the date mentioned. After the charge, and after deliberating in the jury room, the jury returned into open court and announced that they had agreed upon their verdict. The record shows the following in respect to the verdict:

"Gentlemen of the Jury, have you agreed upon your verdict in the case of *State vs. James West* and *State vs. Clarence Ray Rhinehart?*

"We have.

"Do you find the defendants or either of them guilty or not guilty of Breaking and Entering and Larceny as charged in the respective Bills against them?

"Guilty.

"Is that your verdict as to the defendant Clarence Ray Rhinehart?

"Rhinehart, we found not guilty of entering, but guilty of receiving, aiding and abetting.

"Mr. Foreman, let me ask you with regard to West, did you find the defendant, James West, in case 3595 guilty or not guilty of Breaking and Entering the Biltmore Dairy Farms Dairy Bar on the 13th day of December 1962, and as charged in the first count?

"Guilty.

"Did you find the defendant guilty or not guilty of the larceny of the sum of something over $400.00 in money on that night of the property of Biltmore Dairy Farms?

"That was guilty.

"Is that your verdict as to James West?

"Yes, sir.

STATE *v.* RHINEHART.

"Now, as to the defendant Clarence Ray Rhinehart, did you find him guilty or not guilty of Breaking and Entering the Biltmore Dairy Farms Dairy Bar here in Haywood County on the 13th day of December, 1962, as charged in the first count in the Bill of Indictment?

"Not guilty of Entering, but guilty of Aiding and Abetting.

"Now, — well, gentlemen, the Court charges you that a person aids when being present at the time and place he does some act to render aid to the actual perpetrator of the crime though he takes no direct share in its commission; and an aider and abettor is one who gives aid, comfort or commands, advises, incites or encourages another to commit a crime and the Court further charges you that under the law that all who are present at the place of a crime and are either aiding, abetting or assisting, or advising in its commission or are present for such present................ .....................................of the actual perpetrator in person are equally guilty and the Court charges you that if the State had satisfied you from the evidence in this case and beyond a reasonable doubt that Clark, West and Rhinehart went to that Dairy Bar together on the night of December 13, 1962, and Rhinehart got in the phone booth and pretended to make a phone call, but was in reality a watchman while West and Clark went in, the Court charges you that if you were satisfied beyond a reasonable doubt that was the truth about it, that then Rhinehart would be equally guilty as a principal and it would be your duty to find him guilty of Breaking and Entering and Larceny, just as the other two, if you found the other two were or not. So the State cannot accept your verdict of not guilty.....................................as an Aider and Abettor.

"Under the law those are the same thing and so you must return to the Jury Room and resume your deliberations as to Rhinehart and say by your verdict either he is guilty of Breaking and Entering and Larceny; bearing it in mind that if he was there aiding and abetting, the law makes him equally guilty as a principal.

"I don't know whether he is guilty, but you can't return a verdict saying he is guilty and not guilty. The Court cannot accept the verdict in the way you brought it in, so you may return to the jury room and consider the case as to Rhinehart.

"The Jury returns to the Courtroom and the following proceedings were had:

"Gentlemen of the Jury have you agreed upon your verdict as to the defendant Clarence Ray Rhinehart?

"We have.

"Do you find the defendant, Clarence Ray Rhinehart Guilty or not guilty of Breaking and Entering and Larceny of Biltmore Dairy Bar on the 13th of December, 1962, as charged in the first count in the Bill of Indictment?

"Guilty on both counts.

"The second count charges larceny, and what is your verdict in the second count?

"The second count is guilty.

"Is that your verdict so say you all?

"Yes, sir."

The court sentenced defendant Rhinehart to be imprisoned for a term of not less than five nor more than seven years. The court sentenced defendant West to be imprisoned for a term of not less than three nor more than five years. From the sentence imposed, defendant Rhinehart appealed to the Supreme Court. The record before us does not show whether West appealed.

The record before us shows that at the February 1963 Term of Jackson County Superior Court, Huskins, J., presiding, defendant Rhinehart entered a plea of guilty of breaking and entering and larceny, and the State took a nol pros with leave on a count in the indictment charging receiving. Rhinehart was sentenced to imprisonment for a term of not less than four nor more than six years. With the consent of defendant Rhinehart and his counsel, and at his request, the prison sentence as to him was suspended for five years upon certain conditions, one of said conditions being that defendant Rhinehart withdraw his appeal taken with relation to the sentence imposed upon him at the February 1963 term of the Superior Court of Haywood County, and serve that sentence. The record before us shows an application by defendant Rhinehart dated 28 February 1963 and signed by his attorney Frank D. Ferguson, Jr., respectfully requesting permission to withdraw his appeal to the Supreme Court in the Haywood County case and to be permitted to commence serving that sentence.

Thereafter, Rhinehart filed a petition in Haywood County Superior Court for a post conviction hearing to review the constitutionality of his trial at the February 1963 Term of Haywood County Superior Court. This petition was dismissed without a hearing by Patton, J., on 19 July 1963 on the ground that it did not comply with G.S. 15-217 *et seq.* Rhinehart then petitioned this Court for *certiorari.* On 30 October 1963 we remanded the petition for a hearing and appointment of counsel. Patton, J., on 29 November 1963 appointed Walter C. Clark to represent petitioner.

The record before us also shows that at the February Term 1964

of Haywood County Superior Court Pless, J., conducted a hearing in the nature of a *habeas corpus* proceeding and post conviction hearing at the request of James E. West and Clarence Ray Rhinehart. Each was represented by a court appointed attorney. At the hearing before Judge Pless these defendants requested that they be furnished a trial transcript of the evidence and the charge of the court at the hearing before Judge Huskins at the February 1963 Term of Haywood County Superior Court. The judge denied the request because Miss Edna Hayes, the court reporter, had died since the hearing and no one was able to read her stenographic notes. Judge Pless entered an order denying them any relief.

Rhinehart then applied to this Court for *certiorari* to review Judge Pless's order, which we denied on 12 July 1964.

At some date not stated in the record defendant Rhinehart filed a petition for a writ of *habeas corpus* before Judge Craven, United States District Judge for the Western District of the State of North Carolina. Judge Craven on 24 February 1964 entered an order in substance as follows: It appearing to the court from the answer of the State of North Carolina and various documents attached thereto that petitioner Rhinehart has been afforded a completely fair and plenary hearing in the Superior Court of North Carolina under the North Carolina Post Conviction Hearing Act, and that he was represented by court appointed counsel competent to put before the court his contentions with respect to alleged violations of his constitutional rights, it is ordered that his petition be denied and the action dismissed. From this order Rhinehart appealed to the United States Court of Appeals for the Fourth Circuit. That court remanded the matter to the District Court to consider whether Rhinehart should be required to avail himself of any right of review by the State Supreme Court which was still available, and if no State remedies were open, the District Court should review the transcript of the post conviction hearing to determine whether the findings of fact and conclusions of law were supported by the record as a whole. *Rhinehart v. State of North Carolina,* 344 F. 2d 114 (30 March 1965).

On 14 June 1963, Craven, United States District Judge, entered an order in substance as follows: It is the opinion of the court that the suspension of the prison sentence in the Jackson County Superior Court on condition that Rhinehart withdraw his appeal to the Supreme Court of North Carolina from the conviction and sentence at the February 1963 Term of Haywood County Superior Court is constitutionally invalid, and the court concluded that defendant had unlawfully been denied his right of appeal to the Supreme Court of North Carolina from the judgment · and sentence

imposed upon him in the Haywood County Superior Court. That the Attorney General of North Carolina consented in open court that he enter an order permitting the petitioner to *nunc pro tunc* file his notice of appeal to the Supreme Court of North Carolina from a judgment and sentence in the Haywood County Superior Court. That nothing contained in the order shall be deemed a mandate by him to the Supreme Court of North Carolina, but is simply an authorization to him to file his appeal as if it had been filed in apt time. Jurisdiction is retained by him for the limited and sole purpose of further considering this matter in the event the Supreme Court of North Carolina should decide that it cannot, or should not, entertain the appeal herein permitted. The court adjudged that the judgment and sentence imposed in Jackson County Superior Court at the February 1963 Term is a violation of his constitutional rights, and that he is relieved of the burdening effect of such suspended sentence and that the judgment of the Jackson County Superior Court is invalid and of no force and effect.

On 9 August 1965 defendant Rhinehart filed in this Court a petition for a writ of *certiorari* to review the validity of his trial at the February 1963 Term of the Superior Court of Haywood County, and in his petition he filed a copy of Judge Craven's order. The Attorney General filed an answer to Rhinehart's petition for writ of *certiorari* on 31 August 1965, in which it states, among other things, that defendant Rhinehart began service of the prison sentence immediately after the trial in the Haywood County Superior Court February 1963 Term, and that after he had served 22 months of this sentence he was subsequently paroled, and that at the present time he is under the conditions of parole issued to him by the State of North Carolina. The reply of the Attorney General also states that he joins in the request that the Supreme Court permit the appeal in order that the petitioner may have his full day in court and his right of review by the Supreme Court. On 19 October 1965 we allowed the petition for a writ of *certiorari* and ordered that his appeal from the judgment imposed at the trial in the Haywood County Superior Court be reviewed by this Court, and that it be heard in its regular order at the Spring Term 1966.

From the record before us it also appears that shortly before or after we granted the *certiorari* that a court reporter was found who was able to read and transcribe the notes of the reporter at the original trial in Haywood County who had died since the trial.

*Attorney General T. W. Bruton and Staff Attorney Theodore C. Brown, Jr., for the State.*

*Sanford W. Brown for defendant appellant.*

PARKER, C.J. The dismissal by the court of the charge in the third count of each indictment against Rhinehart and West of receiving property knowing it to have been stolen will be treated as a verdict of not guilty on that count as to defendants Rhinehart and West. S. v. Haddock, 254 N.C. 162, 118 S.E. 2d 411.

In the instant case Rhinehart appealed to the Supreme Court. The week following his trial in the instant case, he appeared in the Superior Court of Jackson County, and entered a plea of guilty of breaking and entering and larceny, and was sentenced to imprisonment for a term of not less than four nor more than six years. With the consent of Rhinehart and his counsel, and at his request, this prison sentence as to him was suspended for five years upon certain conditions, one of said conditions being that Rhinehart withdraw his appeal from the prison sentence imposed upon him in the instant case at the February 1963 Term of Haywood County Superior Court, and serve that sentence. It appears from the record before us that he did withdraw his appeal, and began service of the prison sentence imposed at the February 1963 Term of Haywood County.

The law is well settled in this jurisdiction that the trial court in its discretion may suspend sentences in criminal cases upon reasonable conditions. 1 Strong, N. C. Index, Criminal Law, § 135. In criminal cases the right of appeal by a convicted defendant from a final judgment is unlimited in the courts of North Carolina. This right of appeal is a substantial right. G.S. 15-180; S. v. Hodge, 267 N.C. 238, 147 S.E. 2d 881; S. v. Darnell, 266 N.C. 640, 146 S.E. 2d 800; S. v. Grundler, 251 N.C. 177, 111 S.E. 2d 1; S. v. Blades, 209 N.C. 56, 182 S.E. 714. In S. v. Calcutt, 219 N.C. 545, 15 S.E. 2d 9, we held that the execution of a sentence in a criminal action may not be suspended on conditions that conflict with the defendant's right of appeal. In S. v. Patton, 221 N.C. 117, 19 S.E. 2d 142, the Court held that while the trial judge has discretionary power to change the sentence in a criminal action during the term, where it appears of record that after prayer for judgment was continued, with defendant's consent, upon specified terms, the court, upon learning of defendant's intention to appeal, struck that judgment out and imposed a jail sentence, the cause will be remanded for resentence, since defendant's exercise of his right to appeal, C.S. 4650 (now G.S. 15-180), should not prejudice him in any manner. In its opinion the Court said: "But the defendant's consent to the terms of the judgment did not constitute a waiver of his right of appeal for errors to be assigned." In our opinion, and we so hold, the suspension of the prison sentence in the Superior Court of Jackson County on the condition that Rhinehart withdraw his appeal in the instant case taken at the February 1963 Term of Haywood County

Superior Court is not a reasonable condition, and is void, even though done at his request and with his consent, because his right to appeal in the instant case should not be denied and because it would seem that under the circumstances Rhinehart's request and consent were not entirely free and voluntary.

The Attorney General states in his reply to Rhinehart's petition for a writ of *certiorari,* which we allowed on 19 October 1965, that Rhinehart, after serving 22 months of his sentence imposed at the February 1963 Term of Haywood County Superior Court, was paroled, and at the present time he is under the conditions of parole issued to him by the State of North Carolina. G. S. 148-61.1 provides that under certain circumstances the order of parole of any parolee can be revoked, and if revoked the parolee shall thereafter be returned to the penal institution having custodial jurisdiction over him. The conditions of parole are a restraint on Rhinehart's liberty not shared by the public generally. He is still under the supervision of the parole authorities and subject to be remanded to prison if he fails to perform or violates the conditions of the parole. The fact that Rhinehart is on parole does not under the particular facts of this case, and particularly as we have issued a *certiorari* to review the validity of his trial in the instant case, prevent a review here by us of the validity of his trial at the February 1963 Term of Haywood County Superior Court. *S. v. Mathis,* 109 N.C. 815, 13 S.E. 917, is factually distinguishable. In that case defendant was convicted of the crime of murder and there was a judgment of death against him, from which he appealed to the Supreme Court. Pending the appeal and before it was reached in its order to be heard and determined, the Governor commuted his sentence of death to life imprisonment. The defendant accepted the commutation and began his sentence of imprisonment. When his appeal was called in its order to be heard, the prisoner exhibited before the Court the order of commutation of his sentence signed by the Governor, signified his acceptance of the same, and prayed that the Court permit him to abandon his appeal. The Court permitted him to abandon his appeal, and his appeal was dismissed.

When the jury returned to the courtroom to render its verdict, the record shows the following as to Rhinehart:

"Gentlemen of the Jury, have you agreed upon your verdict in the case of *State vs. James West* and *State vs. Clarence Ray Rhinehart?*

"We have.

"Do you find the defendants or either of them guilty or not

guilty of Breaking and Entering and Larceny as charged in the respective Bills against them?

"Guilty.

"Is that your verdict as to the defendant Clarence Ray Rhinehart?

"Rhinehart, we found not guilty of entering, but guilty of receiving, aiding and abetting.

\*　　\*　　\*

"Now, as to the defendant Clarence Ray Rhinehart, did you find him guilty or not guilty of Breaking and Entering the Biltmore Dairy Farms Dairy Bar here in Haywood County on the 13th day of December, 1962, as charged in the first count in the Bill of Indictment?

"Not guilty of Entering, but guilty of Aiding and Abetting."

Defendant assigns as error that the court committed error in not receiving the verdict as to Rhinehart, "Rhinehart, we found not guilty of entering, but guilty of receiving, aiding and abetting." Defendant contends this was a verdict that Rhinehart was not guilty of a felonious breaking and entry and not guilty of larceny as charged in the indictment. Defendant further assigns as error that the court further erred in then recharging the jury and in receiving a verdict that Rhinehart was guilty of a felonious breaking and entry and guilty of larceny as charged in the indictment.

A verdict is a substantial right. *S. v. Gatlin*, 241 N.C. 175, 84 S.E. 2d 880. But it is not complete until it is accepted by the court for record. *S. v. Gatlin, supra; S. v. Perry*, 225 N.C. 174, 33 S.E. 2d 869.

Verdicts and judgments in criminal actions should be clear and free from ambiguity or uncertainty. The enforcement of the criminal law and the liberty of the citizen demand exactitude. *S. v. Jones*, 227 N.C. 47, 40 S.E. 2d 458.

In accepting or rejecting a verdict the trial judge cannot exercise unrestrained discretion. The trial judge should examine a verdict with respect to its form and substance to prevent a doubtful or insufficient verdict from becoming the record of the court, but his power to accept or reject the jury's finding is not absolute. *S. v. Perry, supra; S. v. Bazemore*, 193 N.C. 336, 137 S.E. 172.

The Court said in *S. v. Perry, supra:*

"When, and only when, an incomplete, imperfect, insensible, or repugnant verdict or a verdict which is not responsive to the issues or indictment is returned, the court may decline to accept it and direct the jury to retire, reconsider the matter, and

bring in a proper verdict. *S. v. Arrington,* 7 N.C. 571; *S. v. Mc-Kay,* 150 N.C. 813, 63 S.E. 1059; *S. v. Bazemore, supra* [193 N.C. 336, 137 S.E. 172]; *S. v. Noland,* 204 N.C. 329, 168 S.E. 412; *Queen v. DeHart,* 209 N.C. 414, 184 S.E. 7."

This was quoted with approval in *S. v. Matthews,* 231 N.C. 617, 58 S.E. 2d 625.

When the jury returned to the courtroom, it stated it had agreed upon a verdict in the West and Rhinehart cases. It was then asked: "Do you find the defendants or either of them guilty or not guilty of breaking and entering and larceny as charged in the respective bills against them?" The jury replied: "Guilty." This verdict did not have a definite meaning free from ambiguity, for the reason that it is not clear whether the jury found both West and Rhinehart guilty, or only one of them guilty. The jury was then asked: "Is that your verdict as to the defendant Clarence Ray Rhinehart?" The jury replied: "Rhinehart, we found not guilty of entering, but guilty of receiving, aiding and abetting." Then, after the jury was asked as to West, it was asked this question: "Now, as to the defendant Clarence Ray Rhinehart, did you find him guilty or not guilty of breaking and entering the Biltmore Dairy Farms Dairy Bar here in Haywood County on the 13th day of December 1962, as charged in the first count in the Bill of Indictment?" The jury replied: "Not guilty of entering, but guilty of Aiding and Abetting."

Giving the above verdict as to Rhinehart a reasonable construction, it clearly appears that it is free from ambiguity or imperfection, and that the jury in terms and effect found Rhinehart not guilty of breaking and entering as charged in the first count of the indictment against him. The additional words, "but guilty of receiving, aiding and abetting," are not a part of the legal verdict on the first count in the indictment, and do not leave in doubt the verdict of acquittal on the first count in the indictment, and will be treated as mere surplusage. *S. v. Perry, supra.* The verdict of acquittal of Rhinehart on the charge of breaking and entering as charged in the first count of the indictment should have been accepted by the trial court and recorded, and the court committed prejudicial error in not accepting it and directing the jury to retire and reconsider its verdict of acquittal on the first count in the indictment. *S. v. Matthews, supra,* relied upon by the State, is factually distinguishable, for the reason that in that case the court then made inquiry of the jury in the following language: "Do you find the defendants guilty of an assault with a deadly weapon?" To which the foreman of the jury replied: "Yes. Guilty of aiding and abetting."

Giving the verdict as to Rhinehart tendered by the jury before it was instructed by the judge to retire and reconsider its verdict a reasonable construction, it appears that the jury did not tender a verdict in Rhinehart's case as to the offense of larceny charged in the second count of the indictment. However, when it returned to the courtroom after it had reconsidered its verdict as to Rhinehart, it found as its verdict that Rhinehart was guilty of larceny as charged in the second count of the indictment against him, and the court accepted this verdict of guilty for record. It is established law by many of our decisions that where a verdict of guilty specifically refers to some of the counts, but not all, it amounts to an acquittal on the counts not referred to. 1 Strong, N. C. Index, Criminal Law, § 118, p. 798, where many of our cases are cited. That principle of law is not applicable here because the jury acquitted Rhinehart of the first count in the indictment.

Many of the assignments of error in the record do not comply with the rules of this Court. However, we have examined all defendant's assignments of error as to the evidence and as to the charge of the court, and none are deemed sufficiently prejudicial to warrant disturbing the verdict below that Rhinehart is guilty on the second count of the indictment charging larceny. One judgment was entered in the instant case.

The judgment is vacated, and the cause is remanded to the Superior Court of Haywood County to the end that the court below may (1) strike the verdict entered that Rhinehart is guilty as charged in the first count in the indictment, (2) record the one first tendered by the jury that Rhinehart is not guilty as charged in the first count in the indictment, and (3) pronounce judgment on the verdict against Rhinehart that he is guilty of larceny as charged in the second count of the indictment charging him with larceny. In pronouncing judgment on the verdict of guilty of larceny as recorded, the judge will give Rhinehart full credit for all the time he has served on the judgment in this case, with full credit for any good time that he has earned while serving the sentence.

This is a pauper appeal. However, it appears that Rhinehart is represented by a lawyer employed by himself, because there is nothing in the record to indicate that his present counsel of record was assigned by the court to represent him. Defendant's statement of his case on appeal was prepared by his attorney and service of it was accepted by the State solicitor. There is nothing to indicate that the solicitor served any countercase or exceptions to defendant's statement of case on appeal. Therefore, defendant's statement of case on appeal became the case on appeal. G.S. 1-282. Parts of the case on appeal are referred to in the index as appearing on cer-

tain pages of the case on appeal. No such pages are in the case on appeal. In justice to the learned judge who tried this case, there is nothing to indicate that he ever saw the case on appeal.

Error and remanded.

MOORE, J., not sitting.

DENNY, E.J., and PLESS, J., took no part in the consideration or decision of this case.