Richard VIRGIL, Petitioner,

v.

Captain J. C. HARRIS, Superintendent,
North Carolina Prison Department,
Respondent.

Civ. No. 1999.

United States District Court
E. D. North Carolina,
Raleigh Division.

May 21, 1969.

Romallus O. Murphy, M'tchell & Murphy, Raleigh, N. C., for petitioner.

Robert Morgan, Atty. Gen., Raleigh, N. C., for respondent.

BUTLER, Chief Judge.

This is a habeas corpus application by a state prisoner.  The following uncon-

tested facts appear from the state court records:

1. Petitioner was originally tried in the Superior Court of Wake County, North Carolina, and convicted of burglary in the first degree and sentenced to life imprisonment. He appealed to the Supreme Court of North Carolina [1] and was awarded a new trial because of error in the admission of evidence.

2. Petitioner was retried in March 1965 upon the original indictment and was found guilty of non-burglarious breaking and entering with intent to commit a felony and was sentenced on March 26, 1965, to imprisonment for a term of not less than nine years nor more than 10 years.

3. On March 26, 1965, the petitioner in open court through his court-appointed counsel, who represented him at both his original and second trials, gave notice of appeal to the Supreme Court of North Carolina. The petitioner was allowed 90 days in which to serve statement of case on appeal.

4. On October 6, 1965, petitioner was served with notice that the solicitor would move on October 15, 1965, for an order dismissing his appeal for failure to serve case on appeal in apt time. The motion to dismiss the appeal was heard on October 15, 1965. The petitioner was present in person. His court-appointed counsel did not appear at the hearing, and petitioner was not represented by counsel. An order was entered dismissing the appeal,[2] and commitment issued on October 18, 1965.

5. On November 17, 1965, petitioner filed in the Supreme Court of North Carolina an application for a writ of habeas corpus alleging the refusal of court-appointed counsel to perfect his appeal. On December 15, 1965, the Supreme Court of North Carolina remanded the case to the superior court "to conduct a post conviction hearing to determine whether or not the defendant instructed his counsel to perfect an appeal to the Supreme Court of North Carolina * * * *"

The post-conviction hearing pursuant to the mandate of the Supreme Court of North Carolina was held on March 4, 1966. The petitioner was present in person and represented by counsel. The court found the following pertinent facts:

(a) That the petitioner was tried at the March 1965 Session of the Superior Court of Wake County and the petitioner was allowed 90 days to serve statement of case on appeal; that in June 1965 an order was entered requiring Wake County to pay the costs of the transcript, and the record and brief in the Supreme Court.

(b) That in July 1965, after receiving the transcript, petitioner's counsel delivered the transcript to the petitioner and informed him in person that he found no errors in the trial and advised petitioner not to appeal and to begin service of his sentence. Petitioner's counsel had previously obtained permission from the solicitor to extend the time in which to file the case on appeal.

(c) That petitioner informed his counsel that he would read the transcript, confer with his mother, and then contact counsel; that the petitioner retained the transcript in his possession.

(d) That petitioner did not instruct his counsel to perfect the appeal to the Supreme Court of North Carolina.

The post conviction court thereupon held that the time for perfecting the appeal had expired, and ordered the appeal dismissed. Petitioner sought a writ of certiorari from the Supreme Court of

1. State v. Virgil, 263 N.C. 73, 138 S.E. 2d 777 (1964).

2. N.C.Gen.Stat. § 1–287.1 provides as follows: "When it appears to the superior court that statement of case on appeal to the Supreme Court has not been served on the appellee or his counsel within the time allowed, it shall be the duty of the superior court judge, upon motion by the appellee, to enter an order dismissing such appeal; provided the appellant has been given at least five (5) days' notice of such motion. * * * *"

North Carolina, and from the United States Supreme Court; both applications were denied.

At the post conviction hearing on March 4, 1966, with respect to the October 15th hearing on the State's motion to dismiss the appeal, petitioner testified as follows:

"* * * (O)n the 15th of October I came down to the Superior Court at which time I wrote a petition to [court-appointed counsel] as to why he hadn't appealed my case; the petition wasn't notorized but Judge Bailey said it didn't have to be notorized. Judge Bailey looked at the petition and he asked the Solicitor was [court-appointed counsel] designated to appeal my case to the Supreme Court, so the Solicitor told him, Yes, he was. Judge Bailey then told the Solicitor that he wanted to see [court-appointed counsel] about the appeal because the court had set aside the necessary funds for the perfecting of the appeal to the Supreme Court, that I wanted him to do it whether he could find any errors in the case or not. At the time the appeal was dismissed I was sent to jail, to prison, and that's all I've ever heard from them about it. * * *

"I was waiting for the Supreme Court decision. I was under the impression that my case was on appeal to the Supreme Court. * * * And I was under that impression even after the hearing before Judge Bailey when he dismissed the appeal, was under the impression that my case would be appealed after I talked to Judge Bailey because he assured me, after I told him about it, talked to him about it, that it would be appealed, that it would go up to the Supreme Court on appeal. * * *

"That is the impression that Judge Bailey left me under, the impression that [court-appointed counsel] would perfect the appeal or he would appoint someone to perfect it, one or the other, so I didn't ask whether [court-appointed counsel] was going to perfect it or not, but he told the Solicitor to find [court-appointed counsel] because he wanted to see him. I was under the impression that [court-appointed counsel] would perfect it or someone else would, and I didn't know exactly who."

■ One of the petitioner's court-assigned counsel testified at the March 4th hearing as follows:

"[I did not serve statement of case on appeal] (b)ecause Mr. Virgil never told me that he wanted to appeal to the Supreme Court after we had discussed the case, after we had gotten the transcript and discussed the case. * * * (A)fter I got the transcript I asked Virgil to read it and let me know what his opinion was about it, asked him to see if he could find anything wrong in it and if so we would discuss it and if in my opinion and in [associate counsel's] opinion there was anything we could take it up on, we would, told him that the two main errors in the first trial had been corrected in this trial, that if it was sent back for a new trial he would stand the possibility of reindictment for first degree burglary, that is, if he got a new trial.[3] * * * I suggested to him that in my opinion he should not appeal the case. * * *. [I] let him know that [I] would perfect the appeal if he still wanted it."

■ In this case, following his conviction in the superior court, petitioner through court-appointed counsel gave

---

3. Where a defendant has been tried upon an indictment charging the capital offense of burglary in the first degree, and has been convicted of the lesser offense of non-burglarious breaking and entering with intent to commit a felony, and a new trial is awarded upon appeal, the defendant by seeking reversal of an erroneous conviction does not waive his constitutional defense of former jeopardy, and he cannot be retried for first degree burglary. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). See, also, State v. Birckhead, 256 N.C. 494, 124 S.E.2d 838, 6 A.L.R. 3d 888 (1962); State v. Pearce, 266 N.C. 234, 145 S.E.2d 918 (1966).

notice of appeal in open court; further notice was waived. An order was entered allowing petitioner to appeal *in forma pauperis,* and directing the county to pay the necessary cost of the transcript, and the record and brief required to be filed in the Supreme Court.[4] Counsel had represented petitioner at his trial in the superior court, and were familiar with the incidents of the trial. When counsel sought and obtained an order allowing petitioner to appeal as a pauper they at least implied under existing state law that they had advised petitioner that he had reasonable cause for the appeal prayed.

"In criminal cases the right of appeal by a convicted defendant from a final judgment is unlimited in the courts of North Carolina. This right of appeal is a substantial right. G.S. § 15–180 * * *." State v. Rhinehart, 267 N.C. 470, 479, 148 S.E.2d 651, 657 (1966).

■ Petitioner had clearly made known to counsel and the trial court his desire to appeal, and counsel had been assigned by the court to perfect the appeal as required by statute for an indigent defendant. Gen.Stat. § 15–4.1. A layman is not required to act as co-counsel on appeal and to comb the record for errors in the trial for the benefit of court-assigned counsel.[5] The views of counsel concerning the trial and probable outcome of an appeal are not permitted to thwart an indigent's exercise of his right to appeal. Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963).

■ The post-conviction court concluded that petitioner "did not instruct his counsel to perfect the appeal to the Supreme Court of North Carolina." Here the question is whether petitioner knowingly and intentionally waived his right to an appellate review and instructed his counsel to abandon the appeal. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The record as a whole shows that he did not. Under the circumstances of this case, appellate counsel cannot so easily escape their professional responsibility.

■ There is a prescribed method by which an appeal may be withdrawn. North Carolina law provides: "If for any reason the defendant should wish to withdraw his appeal before the same is docketed in the Supreme Court, he may appear before the clerk of the superior court in which he was convicted and request in writing withdrawal of the appeal. * * *" Gen.Stat. § 15–184. If petitioner's counsel were under the impression that petitioner desired to withdraw the appeal, they should have followed the statutory procedure rather than abandoning the appeal simply because petitioner failed affirmatively to instruct them to proceed.

The rules and regulations adopted by the Council of the North Carolina State Bar pursuant to G.S. § 15–5.1, and approved by the Supreme Court of North Carolina, relating to "the protection of the constitutional rights of all indigent persons charged with crime," provides that "(a)t any time after the trial of a case and during the pendency of an appeal, the trial attorney, for good cause shown, may apply to the Supreme Court for permission to withdraw from the defense of the case upon the appeal." The

---

4. Gen.Stat. § 15–181 provides in pertinent part as follows: "In all cases of conviction in the superior courts, the defendant shall have the right to appeal without giving security for costs, upon filing an affidavit that he is wholly unable to give security for the costs, *and is advised by counsel that he has reasonable cause for the appeal prayed* * * *." (Emphasis added.)

Apparently the constitutionality of this statute has not been challenged in the courts of North Carolina. Whether the statutory provision requiring an averment that counsel has advised that there are reasonable grounds to appeal places an impermissible obstacle upon the right of appeal is not before the court.

5. It would be strange indeed for a surgeon to tell his patient that he is willing to operate if the patient will instruct him where to cut and what to do when he gets inside.

rules further provide that "(a)pplications for permission to withdraw as counsel shall be made only for good cause where compelling reasons or actual hardship exists." General Statutes, Volume 4A, Division XX, Appendix VI–A, Article V, §§ 5.2 and 5.3.

In Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) the Supreme Court in considering the extent of the duty of court-appointed appellate counsel, said:

> "Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal."

Every lawyer, retained or appointed, has a primary obligation to give his client sound professional advise and a candid opinion of the merits and probable result of an appeal, and to attempt to dissuade his client from appealing on frivolous grounds, but in the final analysis the decision to appeal belongs to the client.

We do not read *Anders* as requiring counsel to brief the unbriefable. The court seems to make a distinction between cases that are wholly frivolous in which counsel may be permitted to withdraw, and those apparently lacking in merit, but presenting arguable questions. In appeals wholly frivolous or simply lacking in merit, counsel should avoid the dilemma of deciding between his professional and personal integrity as an attorney and the right of the defendant to the assistance of counsel.

If court-appointed counsel in this case found the appeal to be wholly frivolous and desired to be released of further responsibility, they should have applied to the Supreme Court of North Carolina for permission to withdraw as appellate counsel. If this statutory procedure had been followed, the Supreme Court of North Carolina could have determined by the application of state and federal requirements whether the appeal was wholly frivolous, and whether to grant counsel's request to withdraw and dismiss the appeal, or proceed to a decision on the merits.

Upon the present state of the record in this case, the merits of petitioner's appeal are unknown and unadjudicated.

On a consideration of the record as a whole, we think that the findings and conclusions of the post-conviction court do not support the denial of petitioner's right to appeal; Now, therefore,

It is ordered and adjudged:

1. That the State of North Carolina provide petitioner within a reasonable time an appeal on the merits to the Supreme Court of North Carolina.

2. That the State of North Carolina file a timely certificate with the clerk of this court, stating the disposition of such an appeal.

3. That if such appeal is not permitted within a reasonable time, the court will entertain a motion by the petitioner to issue a writ of habeas corpus releasing petitioner from all custody and re-

straint by virtue of the sentence imposed at the March 1965 Session of the Superior Court of Wake County upon his conviction of non-burglarious breaking and entering with intent to commit a felony.

4. That the clerk of this court serve forthwith by mail a copy of this order upon the Honorable Robert Morgan, Attorney General of North Carolina, a copy upon the petitioner's attorney, Romallus O. Murphy, and a copy upon petitioner, Richard Virgil.

And this cause is retained.