STATE OF NORTH CAROLINA v. LEE MAY

No. 7018SC323

(Filed 24 June 1970)

**1. Criminal Law § 150— defendant's right of appeal — interference by trial court**

It was an unwarranted interference with defendant's right of appeal where the trial court, upon learning of defendant's intention to appeal, struck defendant's suspended sentences and imposed active sentences.

**2. Arrest and Bail § 6;   Obstructing Justice;   Assault and Battery § 15—   defendant's scuffle with officer — instructions on defendant's right of self-defense**

> Where, in a prosecution charging defendant with resisting arrest and with obstructing an officer in the performance of his duties, the defendant offered evidence that the officer had struck the first blow and that defendant was forced in self-defense to take the actions which resulted in the charges against him, the trial court should have instructed the jury to acquit defendant if they found that he was legitimately exercising a right of self-defense; the court's instruction merely that the jury "will take into consideration in arriving at your verdict" the defendant's lawful exercise of self-defense, *held* insufficient and is reversible error.

APPEAL by defendant from *Crissman, J.,* 16 February 1970 Criminal Session, GUILFORD County Superior Court.

Defendant was charged in separate warrants, proper in form, with resisting arrest and with willfully delaying and obstructing a public officer while in the process of discharging the duties of his office. Both offenses arise under G.S. 14-223.

The evidence indicated that J. L. Proffitt, (Proffitt) a highway patrolman, placed one Maxine Russell under arrest for operating an automobile while under the influence of an intoxicant. Mrs. Russell asked that her twelve-year-old daughter be taken to the home where they resided. Defendant apparently lived at the same address. The daughter was carried to the house and left there after she informed the officer that there was an adult present to care for her. The patrolman and an acquaintance who was accompanying him then proceeded with Mrs. Russell toward the police station. On the way Mrs. Russell insisted that they return to the house to make certain that an adult was there. Proffitt agreed to do so in order to "double check" on the presence of an adult. Upon returning to the house, Proffitt went to the door and shined his flashlight on defendant as defendant came out of the house. From this point the evidence is substantially in conflict.

The State's version is as follows: Defendant cursed loudly and told the officer to get the light out of his face. When cautioned by the officer about his language, defendant said he could curse if he wanted to as he was on his own property. Defendant, still cursing, followed Proffitt back to the patrol car, and when Proffitt opened the door and started to get into the car, defendant pushed the door against him. At that point Proffitt told the defendant that he was under arrest. Proffitt then started around the door and as he approached defendant, defendant swung at him and Proffitt defended himself by throwing defendant to the ground and spraying him in

the face with mace. While the scuffle was taking place Mrs. Russell opened the door and ran toward the house. Proffitt left defendant and pursued Mrs. Russell who voluntarily returned to the patrol car. Warrants were served on defendant the following day.

Defendant testified in his own behalf and offered the testimony of Mrs. Russell and her daughter. Defendant's version of what occurred is summarized as follows: When Proffitt shined the light in defendant's face, defendant said: "Get that damm light out of my eyes." Proffitt replied: "What in the hell is wrong with you? Are you drunk?" Defendant walked peacefully to the car with Proffitt and on the way Proffitt told him: "If I could get you in that road, I would arrest you." Defendant further testified: "When he got to the car, and when he went to open the door, he snatched it and struck me right in the ankle. I shoved the door right back. He hit me right up the side of my head, and I fell down on one knee. On the way down I heard him say 'You're under arrest.' I came up with a left, and I said 'Like hell, I am,' and hit him. There were eight or ten licks passed. I hit him a few, and he hit me a few. He sprayed that mace in my eyes. There is a bank over there, and I fell against the bank. He kicked me in the chest. I was half blinded." Defendant denied that he had been drinking anything "stronger than a cup of coffee."

The jury returned verdicts of guilty as to both charges. The record reflects that after the verdicts were returned the following transpired:

> "COURT:   In Case No. 69-Cr-64572, let this defendant be confined to the county jail for a period of six months to be assigned to work under the supervision of the State Department of Correction. This sentence is suspended for a period of five years on condition that he be of general good behavior and not violate any of the laws of this State or Federal Government, and on the further condition that he pay a fine of one hundred dollars and the court costs.

> In Case No. 69-Cr-64573, let this defendant be confined to the county jail for a period of four months to be assigned to work under the supervision of the State Department of Correction. This sentence to begin at the expiration of 69-Cr-64572. And this sentence is suspended for a period of five years on condition that he be of general good behavior and not violate any of the laws of this State or Federal Government, and that he pay a fine of twenty-five dollars and the court costs.

MR. SMITH [Defendant's Counsel]:  He stated that he wants to appeal. I am retained. There is no expense to the State in the matter.

COURT:  Let's make it a little different then.

Let this defendant be confined to the county jail in 69-Cr-64572 for a period of six months to be assigned to work under the supervision of the State Department of Correction.

In 69-Cr-64573, let the defendant be confined to the county | jail for a period of four months to be assigned to work under the supervision of the State Department of Correction. This sentence to begin at the expiration of the sentence in 69-Cr-64572.

Let the record show that this defendant gives notice of appeal in open court. Further notice is waived; that he is allowed fifty-five days within which to serve and perfect his appeal, and that the State is given twenty-five days thereafter within which to prepare and serve countercase. Let the appearance bond be one thousand dollars and the cost bond two hundred dollars.

MR. SMITH:  Does the record show that the court changed the sentence   after the defendant notified the court that he was giving notice of appeal?

COURT:  I don't know what the record shows. The record is here. I changed it, and I have a right to, and I could have increased it.

EXCEPTION NO. 9

That is all. Let him be in custody until he has furnished bond."

Defendant excepted to the entry of the judgment and appealed assigning numerous errors.

*Robert Morgan, Attorney General, by Sidney S. Eagles, Jr., Assistant Attorney General, and Russell G. Walker, Jr., Staff Attorney, for the State.*

*Norman B. Smith for defendant appellant.*

GRAHAM, J.

[1]   Defendant assigns as error the court's action in changing the suspended sentences and imposing active sentences upon learning of defendant's intention to appeal.

"In criminal cases the right of appeal by a convicted defendant

from a final judgment is unlimited in the courts of North Carolina. This right of appeal is a substantial right. G.S. 15-180; *S. v. Hodge,* 267 N.C. 238, 147 S.E. 2d 881; *S. v. Darnell,* 266 N.C. 640, 146 S.E. 2d 800; *S. v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1; *S. v. Blades,* 209 N.C. 56, 182 S.E. 714. In *S. v. Calcutt,* 219 N.C. 545, 15 S.E. 2d 9, we held that the execution of a sentence in a criminal action may not be suspended on conditions that conflict with the defendant's right of appeal." *State v. Rhinehart,* 267 N.C. 470, 148 S.E. 2d 651.

In *State v. Patton,* 221 N.C. 117, 19 S.E. 2d 142, after the trial judge imposed sentence that prayer for judgment be continued on certain conditions, defendant entered notice of appeal. Thereupon the judge ordered the previous sentence stricken and imposed a sentence of 90 days in jail. In remanding the case for resentencing the Supreme Court, speaking through Devin, J., (later C.J.) stated:

"While undoubtedly the presiding judge had the power to change his judgment at any time during the term in his sound discretion (*S. v. Godwin,* 210 N.C., 447, 187 S.E., 560), yet it seems here, under the circumstances described in the record, the action of the judge was induced by the defendant's expression of his intention to appeal. This tended to impose a penalty upon the defendant's right of appeal and to affect the exercise of his right to do so. C.S., 4650; *S. v. Calcutt,* 219 N.C., 545, 15 S.E. (2d), 9; *S. v. Burgess,* 192 N.C., 668, 135 S.E., 771.

It may be noted that in the same statute wherein provision was made for the organization of this Court, in 1818, it was declared that appeals might be taken from the sentence or judgment of the Superior Court 'in any cause of action, civil or criminal,' thus establishing the policy, ever since adhered to, of unlimited right of appeal to the Supreme Court by any party aggrieved. This right ought not to be denied or abridged, nor should the attempt to exercise this right impose upon the defendant an additional penalty or the enlargement of his sentence. Doubtless the trial judge felt impelled to change the sentence by the fact that he understood the defendant had consented to the judgment first imposed. But the defendant's consent to the terms of the judgment did not constitute a waiver of his right of appeal for errors to be assigned. The defendant would have had the right to appeal even if he had pleaded guilty. In *S. v. Calcutt, supra,* the judgment, which was imposed after the defendant in that case had pleaded guilty, was held to affect his right of appeal and was stricken out for that reason. In the language

of *Chief Justice Stacy,* 'His appeal was allowed, and it is not to be supposed that any penalty was attached thereto or imposed as a result thereof.'"

The State has made no effort to distinguish the case at hand from the *Patton* case. We think it indistinguishable. The proper procedure would ordinarily be to remand the case to Superior Court for resentencing; however, for the reasons hereinafter set forth, a new trial is necessary.

[2] The theory of defendant's defense, as shown by his evidence, was that he was assaulted by the officer before he had interferred in any manner with the officer in the performance of his duties and before he had been lawfully arrested; and that the blows he struck were administered in the exercise of his right of self-defense. Irrespective of the persuasiveness of the State's evidence to the contrary, defendant was entitled to have his theory presented to the jury under proper instructions. By his assignment of error number 5, defendant has challenged the sufficiency and the accuracy of the court's instructions on self-defense.

Although the court charged in several places that defendant contended he did not interfere with the officer or offer resistance but merely defended himself, the only instructions specifically dealing with the right of a person assaulted to defend himself is the following portion of the charge which is excepted to by defendant:

"Now, members of the jury, if you are satisfied that this officer attacked in any way this defendant, and that the defendant was placed in a position of having to defend himself, then the court charges you that if you are so satisfied that he was merely repelling force with force such as was necessary under the circumstances to protect himself, he not being in any way in the wrong himself, then the court charges you that you will take that into consideration in arriving at your verdict; the burden being upon the State in each of these cases to satisfy you beyond a reasonable doubt of the guilt of the defendant."

The above instruction is insufficient and erroneous in several respects. See *State v. Lee,* 258 N.C. 44, 127 S.E. 2d 774; *State v. Fletcher,* 268 N.C. 140, 150 S.E. 2d 54; *State v. Anderson,* 230 N.C. 54, 51 S.E. 2d 895; 1 Strong, N.C. Index 2d, Assault and Battery, §§ 8, 15. While defendant was not charged with assaulting the officer, the actions which he contends he took in self-defense are those which the warrants charge constitute the unlawful interference and the resistance to arrest. Consequently, the jury should have been

properly charged on the principle of self-defense under this factual situation and that if they were satisfied defendant was legitimately exercising a right of self-defense it would be their duty to acquit him, not simply to take it into consideration in arriving at their verdict as the court charged.

We refrain from discussing the other assignments of error in that the questions raised may not reoccur upon retrial.

New trial.

MALLARD, C.J., and MORRIS, J., concur.